### JENCKS and others *vs.* ALEXANDER and others.

The power of sale in a mortgage, so far as it relates to the equity of redemption, or the surplus value of the mortgaged premises beyond the amount of the mortgage debt, is a power in trust.   And any collusive arrangement, between the mortgagee and a third person, to execute the power of foreclosure and sale in such a manner as to deprive the owner of the equity of redemption of the benefit intended to be given to him by the statute relative to the notice of sale, or whereby such owner will be deprived of the benefit of a fair competition at the sale, is a fraud upon his rights.

Where the evidence showed that a mortgagee had fraudulently, and in collusion with a third person, foreclosed his mortgage by a statute foreclosure, for the purpose of

Jencks *v.* Alexander.

. enabling the latter to obtain the premises at a price far below their value, and with the intention of defrauding the owners of the equity of redemption, the court of chancery set aside the sale.

There is no resulting trust in favor of the husband, where he purchases real property and takes the conveyance in the name of his wife. But if the object of such conveyance is to place the property of the husband beyond the reach of his then existing creditors, there will be a resulting trust, for their benefit, to the extent of their debts.

In the application of payments which are made before the principal of the debt becomes due, the following rules are to be observed :

Where the principal is not due, but the interest is due, the payment must first be applied to pay the interest then due, and the residue towards that part of the principal which will first become due and payable ; so as to stop the interest, pro tanto, from the time of such payment.

But where neither principal nor interest has become due at the time of the payment, the amount paid should be applied to the extinguishment of principal and interest rateably ; so as to extinguish a part of the principal, and the interest which has accrued on the part of the principal thus extinguished.

A mere mistake in computing the amount due upon a bond and mortgage, at the time of the first publication of the notice of sale, upon a statute foreclosure, is not of itself sufficient to vitiate the sale.

It seems that the notice of sale, upon a statute foreclosure, should state the whole amount which is claimed to be unpaid upon the bond and mortgage, and not merely the amount which has actually become due and payable at the time of the first publication of the notice of sale ; and that it is irregular to sell the mortgaged premises subject to the payment of future instalments, without specifying the amount of such instalments.

Whether the mortgaged premises can be sold, upon a statute foreclosure, subject to the payment of future instalments which are to become due on the bond and mortgage, even if the amount of such future instalments are stated in the notice of sale ? *Quære.*

THIS was an appeal by D. Capron, one of the defendants, from a decree of the late vice chancellor of the seventh circuit, setting aside a statute foreclosure of a mortgage, with costs. In 1828, the defendant, Elisha Capron, who was a widower, having two sons by a former wife, intermarried with Sabra Jencks, a maiden lady, who had considerable property ; and who died in 1834, without having had any issue. Soon after this marriage, E. Capron became insolvent, having spent the property which came to him by his second wife. In 1831, A. Smith, who had become the purchaser of a farm, upon a mortgage foreclosure, which farm had once belonged to E. Capron, gave to

Mrs. Capron a contract to give her the benefit of the future sale of the premises, beyond what he had paid therefor and his expenses and trouble, for her own use; as some compensation for her property which had been received and spent by her husband. On the 24th of August, 1833, the defendant, W. H. Alexander, conveyed to Mrs. Capron, in fee simple, a village lot in Syracuse, and took from her and her husband a mortgage upon the premises, for the purchase money, $650, payable in five equal yearly payments, commencing on the 1st of January, 1834, with interest annually. And on the same day $500 was paid and endorsed upon the mortgage; which payment was a part of the proceeds of the contract made by Smith for the benefit of Mrs. Capron. On the 14th of September thereafter, a further payment was made upon the mortgage, leaving due thereon, at the death of Mrs. Capron, $147 and the interest from the date of the mortgage. The parents of Mrs. Capron having died previous to 1834, her four brothers and her sister became entitled to her interest in the premises, at her death, as her heirs at law. On the 4th of November, 1835, Alexander commenced proceedings to foreclose the mortgage under the statute, and advertised the premises for sale on the 23d of April, 1836, stating in his notice of sale, that $20,98 was due for interest on the mortgage. Instead of advertising in a newspaper in the village of Syracuse, where the mortgaged premises were situated, and where the mortgagee and his attorney resided, and where the sale was to be made, the notice of sale was sent to a newspaper at Skaneateles, about eighteen miles from Syracuse. On the day appointed for the sale, the premises were put up and sold, *subject to the incumbrance of the principal moneys which were thereafter to become due upon the mortgage*, and were struck off to C. Bradley, the copartner of the mortgagee, for the nominal sum of $57, no part of which was ever paid by him; although such premises were then worth from twelve to fifteen hundred dollars. E. Capron continued in possession, with his two sons, David and Lansing, until June, 1839, when, by an arrangement between Alexander and E. Capron and his two sons, Bradley

conveyed the premises to David Capron, who gave to his father a lease for life of a part thereof.

In September, previous to the commencement of the proceedings to foreclose the mortgage, Gideon Jencks, one of the heirs at law, called upon the mortgagee to inquire as to the amount due upon the mortgage, but received no intimation that any interest was remaining unpaid, or that the mortgagee intended to proceed to foreclose on account of the non-payment of interest. A few days before the sale, the son of G. Jencks called upon the mortgagee in relation to the payment of the mortgage, and said he was going to Connecticut and would be back in ten days and pay it; when the mortgagee said he should like the money well enough. But Alexander neither told him that he was foreclosing the mortgage, nor gave him any intimation of the fact. Subsequent to the sale, the son of G. Jencks again called upon Alexander, and tendered him the whole amount due and to become due upon the mortgage, and the costs of the alleged foreclosure, but he declined receiving the money. Gideon Jencks died in February, 1838, and in August thereafter, Alfred Jencks, his son and devisee, called upon Alexander and paid him $200, as the whole amount due upon the mortgage ; which amount he received. And Alexander acknowledged satisfaction of the mortgage and cancelled the bond given therewith, but still insisted upon the validity of the foreclosure, and subsequently made the arrangement by which Bradley conveyed the premises to the defendant, D. Capron. The bill in this cause was filed, in June, 1839, by the then surviving brothers and the sister of the decedent, Mrs. Capron, and by A. Jencks, the son and devisee of the deceased brother, charging the above facts, and also charging a fraudulent collusion, between the defendants, to deprive the heirs of Mrs. Capron of the property, by a foreclosure of the mortgage, when nothing was due thereon. The defendants set up, in their answer, that there was an agreement that the two sons of E. Capron should have the premises conveyed to Mrs. Capron, after her death and the death of their father; and that she held the legal title in trust. No legal proof, however, was produced

to establish such a claim. The cause was heard upon pleadings and proofs before the vice chancellor.

*G. Lawrence,* for the appellant.

*B. Davis Noxon,* for the respondents.

THE CHANCELLOR. The complainants in this case, as the heirs at law of Mrs. Capron, are unquestionably entitled to the premises in controversy, if the mortgage to Alexander was not honestly and fairly, as well as legally, foreclosed. It is not very material to inquire whether the $500 paid on the mortgage, on the day of its date, was the separate and individual property of Mrs. Capron or not. For, by the provisions of the revised statutes, the equitable as well as the legal estate passed to the wife, subject to the marital right to the use and possession thereof by the husband during their joint lives ; even if the whole consideration of the purchase was paid by him. There can be no resulting trust in favor of the husband, where he purchases lands and takes a conveyance thereof in the name of his wife. And even if he is insolvent at the time of such purchase, no person can reach the property, in the hands of the wife, except those who were the creditors of the husband at the time of such purchase ; or whose debts arose out of some contract or liability of the husband which he had before the purchase made or incurred. (1 *R. S.* 728, §§ 51, 52.) To make a trust in favor of any other person, in a case of this kind, it is necessary that the trust should be evidenced by a deed or conveyance in writing, and acknowledged by the wife in the usual form ; where the trust is not expressed in the conveyance which is taken by the husband in her name. I am also satisfied by the evidence, that the fund which was applied in payment of the $500 upon this bond and mortgage, was considered by all parties as equitably belonging to Mrs. Capron. Although her personal property became the property of her husband upon the marriage, and was therefore applicable to the payment of his debts, subject to her equitable right to a support out of so much thereof as the husband had not reduced to pos-

session, Smith had a right to insist that the gift which he made, of an interest in the farm that belonged to him absolutely, should be secured for the benefit of Mrs. Capron; as an equivalent in part for the property which she had brought to her husband by the marriage, and which had been expended in the payment of the debts of the latter. The question then arises whether this mortgage was properly foreclosed, so as to constitute Bradley a purchaser in good faith, within the true intent and meaning of the eighth section of the title of the revised statutes relative to the foreclosure of mortgages by advertisement. For, D. Capron, the appellant, as well as his father, had notice of all the facts which were calculated to invalidate the sale in the hands of Bradley. And if Bradley was not entitled to retain the property as against these complainants, the Caprons, who derived their interests in the premises under and through him, have no better rights.

The mere fact of advertising the mortgaged premises for sale in a paper published in a remote part of the county, certainly would not of itself be sufficient to defeat a statute foreclosure, if there were no other circumstances in this case to show that the proceedings were not conducted in good faith. But the power of sale in a mortgage is a power in trust, so far as relates to the interest of the mortgagor, or of his heirs or assignees, in the equity of redemption, or the surplus value of the mortgaged premises beyond the amount that is due and to become due upon the mortgage; although it is at the same time a beneficial power, to the extent of the interest of the mortgagee in the premises, for the satisfaction of his debt. Any collusive arrangement, therefore, between the mortgagee and a third person, so to execute the power of foreclosure and sale, under the statute, as to deprive the owner of the equity of redemption of the benefit intended to be given to him, by the statute, relative to the notice of the sale, or whereby such owner will be deprived of the advantage of a fair competition at the sale, is an act of bad faith on the part of the mortgagee, and a fraud upon the rights of the owners of the equity of redemption. Taking all the evidence in this case into consideration, it is impossible to wink so hard as not to see that the power of sale was executed in bad faith, under some

secret understanding, or implied agreement, between Alexander and his co-defendants, that the property should be brought to a sale in such a manner as to deprive the heirs at law of Mrs. Capron of their rights in the equity of redemption.

I think the counsel for the complainants is wrong in supposing that nothing had become due and payable upon the mortgage at the time the proceedings to foreclose were instituted. It is true a sum much larger than the two instalments of $130 each, and all the interest upon the residue, had been paid. But the proper application of the payments was to apply them towards the satisfaction of the principal of the debt, at the time of such payments respectively, after deducting from such payments the interest which had then accrued. The payment of the $500, on the day of the date of the mortgage, being applied in satisfaction of the three first instalments of principal and $110 of the fourth instalment, left $20 of the fourth instalment, and the whole of the fifth instalment still due. And as, by the terms of the bond and mortgage, the interest on the whole $650 was payable annually, the mortgagee would have been entitled to the annual interest on the $150, which still remained due on the two last instalments, if there had been no subsequent payment. The payment of $3 on the 14th of September, 1833, must be applied towards the fourth instalment of principal, after deducting therefrom the interest on the $3, from the 24th of the preceding August. In other words, where principal is not due, but interest is due, the payment must first be applied to the extinguishment of the interest then due and payable, and the residue to the extinguishment of that part of the principal which will first become due; so as to stop the interest, pro tanto, from the time of such payment. But where neither principal nor interest has become due at the time of the payment, such payment, in the absence of any agreement as to the application, is to be applied to the extinguishment of principal and interest, rateably; according to the decision of the supreme court in the case of *Williams* v. *Houghtaling*, (3 *Cowen's Rep.* 86.)

In the present case, after both payments had been made, there remained for future payment $17,01 of the fourth instalment,

which was to become due on the first of January, 1837, and the whole of the last instalment, which was payable one year thereafter. And the mortgagee was entitled to annual interest upon the $147,01, which thus remained unpaid, to be computed from the date of the mortgage. There was therefore due and payable, at the time of the commencement of the proceedings to foreclose the mortgage, in November, 1835, $20,58, for two years' annual interest upon the balance of principal which was yet to become due. This was forty cents less than was claimed to be due, in the notice of sale. But a mere mistake in computing the amount due at the time of the first publication of the notice, does not of itself furnish any sufficient ground for setting aside the sale under the statute. The direction in the statute, that the notice of sale should contain a statement of the amount *claimed* to be due upon the mortgage, was undoubtedly for the purpose of apprizing the owners of the equity of redemption of the extent of the claim of the mortgagee, so that they might not be surprised at the sale, by an unfounded claim for what had in fact been paid previously; and to enable them to apply to this court for relief, in due season, if the amount due could not be otherwise adjusted between the parties. I am inclined to think, however, that the true construction of the statute is, that the notice of sale must state the whole amount claimed to be unpaid, upon the mortgage, at the time of the first publication of the notice of sale; and not merely the amount of the mortgage money which has then become payable. And the sale of the premises, in this case, subject to the payment of future instalments thereafter to become due, and without specifying the amount of such instalments, was wholly unauthorized and irregular. I think the fair inference from the testimony is, that the property was put up and sold subject to the payment of future instalments, without stating to the persons who were present at the sale that all of the principal of the mortgage, except the $147, had been actually paid previous to the notice of sale; thus leaving them to suppose that the three last instalments, none of which, by the terms of the mortgage, were payable until after the 4th of November, 1835, were all unpaid, and that the purchaser would take the title, under the

statute foreclosure, subject to the lien thereof. Without deciding the question, therefore, whether a sale subject to the payment of any future instalments is not wholly unauthorized by the power of sale, I think the sale, which was made in this case without specifying the exact amount of the future instalments to which the premises were to be subject in the hands of the purchaser, was calculated to destroy fair competition; and was sufficient to avoid the sale, even if the proceedings in other respects had been conducted in good faith. I am satisfied also, that the notice was published, in a remote part of the county, for the improper and unjustifiable object of preventing such notice from coming to the knowledge of the owners of the equity of redemption, or of persons who would be likely to attend the sale and bid upon the premises. It is true the attorney, who refuses to answer why he published the notice of sale in that particular paper, swears he received no instructions from his client to publish it there. But the client, who employed him to foreclose the mortgage, is still answerable for his acts, which were done for the purpose of preventing a fair competition, to the same extent as if he had given special directions to that effect. The fact also that Alexander did not intimate to G. Jencks, when he called on him in the fall of 1835, that there was a small balance of interest due, and that he should proceed to foreclose if it was not paid, shows conclusively that the publication of the notice in a remote part of the county was not contrary to his wishes; and that his attorney had good reason to suppose that any course of proceedings which would be likely to result in a sale of the premises for a mere nominal amount, and without actual notice to the owners of the equity of redemption, would not be likely to be disapproved of by the client. Whether A. Jencks, or the defendant Alexander, is the one who has sworn falsely, in relation to the interview in April, 1836, and just before the sale, cannot be determined in this suit. So far, therefore, as the allegations in the bill, on that subject, are denied by the answer, they must go for nothing. Enough, however, appears from the answer itself to satisfy me that the fact that the mortgage was in a process of foreclosure, and that the premises were to be sold in a few days, was care-

fully concealed from Jencks, although Alexander had reason to believe, from what then took place, that he was ignorant of the fact. If Alexander had, therefore, been himself the purchaser, at this sale, I think no court of equity could hesitate to say the sale must be set aside, on the ground that he was not a purchaser of the premises in good faith. The proof also satisfies me that Bradley never intended or expected to purchase the premises for himself. And I have no doubt that he actually purchased for the benefit of Alexander, and to enable the latter to transfer the title to the Caprons, or to some of them, discharged of the equity of redemption of the heirs at law of Mrs. Capron. He swears, himself, that he never paid any thing upon his bid, and never, to his knowledge, received the deed from Alexander, although it appears the deed was actually put upon record a few days after the sale. The weight of evidence, also, is in favor of the supposition that he actually gave back a deed to Alexander, and delivered it to Lawrence, his attorney, for him. Whether such a deed was in fact executed, however, is wholly immaterial to the question whether Bradley can be considered as a bona fide purchaser of this property for a valuable consideration.

The decree appealed from must be affirmed, with costs.