JOHN H. HURT v. B. P. COOPER ET AL.

(Case No. 2025.)

1. PLEADING.— A plea setting forth that a proposition for a settlement of the matters in controversy had been made, and which was not shown to have been in any respects complied with, or accepted, should be stricken out on demurrer.

2. HOMESTEAD — TRUST SALE — EQUITY — NOTICE — TRUSTS AND TRUSTEES.— The owners of a homestead made an absolute conveyance thereof with full warranty, taking from the apparent purchaser a promissory note for the deferred payment, with a trust deed on the property to secure its payment. Afterwards, the original vendors transferred and indorsed the note to H. for value, who, in default of payment, procured the trustee to advertise and sell the property at public sale, at which H. became the purchaser, receiving a deed from the trustee. In a suit by H. to recover a balance still due on the note, from the original owners of the homestead and their apparent vendees, the latter set up homestead rights, and, among other defenses, that the conveyance by them was not real, but colorable, being resorted to as an expedient to raise money by negotiating the note for the deferred payment,

and that H. caused this course to be resorted to, and knew the real character of the transaction. *Held:*

(1) If H. had notice that the conveyance was made to the apparent vendee by the owners of the homestead, not on a real consideration, but that it was accepted by him for their accommodation and as a means of enabling the owners to procure money, then the deed to the apparent purchaser divested as to him no homestead rights of the original owners.

(2) If H. had no such notice he could rely on the deed from those claiming the homestead, as having been sufficient to divest them of all interest in the property, and this even though the vendors had remained in possession of the property after executing the deed.

(3) A cause will not be reversed for an immaterial error which could not have changed the result of a trial.

(4) What constitutes a "newspaper," as that word is used in a trust deed, which refers to it as a means of giving notice of sale, is a matter of law; but whether a particular paper is so published and circulated, and contains such matter as to constitute a "newspaper," is a question of fact, which, like any other fact, is to be determined by a jury.

(5) If the newspaper to be selected is, by the terms of a trust deed, to be left to the discretion of the trustee or *cestui que trust*, and he, abusing the trust, selects and publishes notice of a sale in a paper in which proper notice of the time and terms of sale cannot be given, it would constitute a ground for avoiding a trust sale made in pursuance of such publication. (Following Johnston *v.* Eason, 3 Ired. Eq., 334; Singleton *v.* Scott, 11 Iowa, 599; Jencks *v.* Alexander, 11 Paige, 624–627, and Graham *v.* King, 50 Mo., 23.)

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

On the 17th of March, 1877, Thos. D. Gilbert borrowed from the plaintiff Hurt a sum of money which appears to have been secured as follows: Thos. Gilbert and his wife Annie made a deed of conveyance to B. P. Cooper for lots 6 and 7 in block 626, and lot 11 in block 143, in the city and county of Galveston, Texas. The deed recited a consideration of $4,500 as paid and the further consideration of said Cooper's promissory note of same date for the sum of $5,500, payable twelve months after date and bearing twelve per cent. interest, payable quarter-yearly, and to secure this note a trust deed of even date therewith was executed by said Cooper, giving H. M. Truehart and Lucien Minor, trustees, power to sell said property in default of payment of said note. Plaintiff's petition alleged that after the execution of said note on the 17th of March, 1877, Cooper delivered the same to Thos. Gilbert and Catherine Gilbert, and that they, on the day and year aforesaid, indorsed it in blank and delivered it so indorsed to plaintiff Hurt, who thereby then and there became and was and still is the lawful bearer and owner thereof. Cooper reconveyed by deed dated July 13, 1877, the same property to Catherine and Thos. Gilbert, the consideration recited

being that Gilbert assumed the payment of the promissory note. These papers were all prepared in the office of Truehart & Co., and the property, lots 6 and 7 in block 626, was placed in the hands of Truehart & Co. by Thos. Gilbert at the time of the delivery of the note to Hurt, with instructions to collect the rents therefrom and apply same towards the payment of that note. Hurt paid no money at the time of receiving the note and trust deed, but afterwards, on the 27th day of March, 1877, made an agreement the original of which was attached to the transcript. This agreement authorized Hurt to pay off all incumbrances upon the property, which consisted of a judgment in the district court of Galveston county against Gilbert, amounting then to the sum of $3,442.66, and taxes due to the city of Galveston and to the county and state. Plaintiff testified that he paid the judgment and also taxes on this and other property. On the 27th day of December, 1879, the lots 6 and 7 in block 626, with the buildings and improvements thereon, and lot 11 in block 143, were sold by Truehart and Minor, trustees under the trust deed, and bid in by Hurt for the sum of $3,350, and a credit as of the same day was placed by them on the note for the proceeds of sale, less $96.50, as trustees' commissions, leaving credit of $3,253.50. Afterwards, on the 27th day of September, 1880, Hurt brought suit against Cooper as maker, and Thos. and Catherine Gilbert as indorsers, and claimed in his petition the full $5,500, with twelve per cent. interest thereon from date of note, less $4,222.51, admitted as a credit on the note. Lot 11, in block 143, had always remained in the possession of Gilbert and wife, and was claimed by them as forming a part of their homestead. After December 27, 1879, Hurt took possession of lots 6 and 7 in block 626, and continued to appropriate the rents, issues and profits therefrom to his own use.

The pleadings are lengthy, but the case can be understood sufficiently from this statement in connection with the opinion.

*Gresham & Jones*, for appellant, cited: Levy v. Gray, 56 Miss., 318: Carpenter v. Arnold, 10 C. E. Green, 194; Wright v. Arnold, 14 B. Mon., 645; Anderson v. Armistead, 69 Ill., 452; Story's Equity Jurisp., vol. I, secs. 384–389; Bigelow on Estoppel, 479, n. 2; 513, n. 1; Kerr v. Hitt, 75 Ill., 51; Greenl. on Ev., vol. 1, §§ 192, 275, 277, 297; Jones v. Foxall, 13 Eng. Law & Eq., 140, 145.

*Wharton Branch*, for appellees, cited: Phil. on Ev., vol. II, p. 279; Story on Agency, secs. 68, 69, 76 and 83; 1 Story's Eq. Jur., sec. 64f; 2 id., secs. 697, 1047, 1047a, 1227.

STAYTON, ASSOCIATE JUSTICE.— That part of the answer of Catherine and Thomas D. Gilbert contained in the fifth paragraph presented no defense to this action, and the demurrer thereto should have been sustained.

The inquiry or proposition for settlement, contained in the letter of H. M. Truehart & Co., of date January 26, 1881, was probably offered to support the part of the answer before referred to, was inadmissible, and should have been excluded.

At most it amounted to no more than a proposition for a settlement of the matters in controversy, not shown to have been in any way accepted or complied with, and hence not binding on either party.

It was claimed in the answers that the lots on which the trust deed was given were conveyed by Catherine and Thomas D. Gilbert and his wife to B. P. Cooper, for the sole purpose of procuring a note, in form a purchase money note, on which appellant was willing to lend money, and that, in fact, Cooper made the note and accepted the deed solely for the accommodation of the Gilberts, who, as between themselves and Cooper, were the real debtors, and also the owners of the lots, which, in accordance with the original understanding between them, he soon afterwards reconveyed. The evidence shows very fully that this was the real nature of the transaction between the Gilberts and Cooper, and it is alleged that of this Hurt had notice at the time he contracted to lend money to the Gilberts on the security of the note and trust deed executed to them by Cooper.

While there is a conflict of evidence as to whether Hurt knew the real nature and purpose of the transaction between the Gilberts and Cooper, and the weight of the direct evidence may be in favor of the negative of this proposition, yet it cannot be denied that there is circumstantial evidence from which a jury might come to the conclusion that Hurt did have notice of the nature and purpose of that transaction.

If he had such notice, then he could not rely upon the deed from the Gilberts to Cooper for the divestiture of such homestead rights as the former had in lot 11, block 143; for he would stand charged with notice that Cooper held the legal title to the lot in trust for the Gilberts, and the trust deed, by him apparently made to secure the purchase money for the lot, could not have any further effect towards the divestiture of the homestead right than would such a deed had it been executed by the Gilberts directly.

If, however, Hurt had no notice of the nature or purpose of the

conveyance from the Gilberts to Cooper, then he might rely upon that deed for the divestiture of title to the lot, and the consequent divestiture of any homestead right the Gilberts may have had therein; and it would be subject to sale to satisfy his debt contracted in good faith on what appeared to be the real title of Cooper, which would pass through a sale made under the trust deed.

This would be true, although the Gilberts may have remained in possession of the lot after they made the deed to Cooper. Eylar v. Eylar, 60 Tex., 315.

Hurt having advanced money on the faith that the title was, as it was declared to be by the deed of the Gilberts, in the maker of the trust deed, would be entitled to full protection against any homestead claim the Gilberts might set up, if he had no notice of the real nature and purpose of the transaction between them and Cooper at the time he parted with his money on the faith of the security given by Cooper.

The introduction in evidence of the deed from Cooper to the Gilberts could not have prejudiced the appellant's case in any respect, for, bearing date subsequent to that of the trust deed from Cooper, it was immaterial whether the legal title subsequent to the date of the trust deed was in the one or the other; and at most, it only showed that the legal as well as the equitable title was in the Gilberts.

If the action of the court in admitting the parol testimony of the defendant Gilbert, to show what he intended by the use of the words " all taxes and interest due on said judgment," as used in the paper signed by Catherine Gilbert and himself, was error, we are of the opinion that this was immaterial error; for we are of the opinion that the true construction of the instrument, unexplained by evidence *aliunde*, would confine the word " taxes " to some liability of Catherine and Thomas D. Gilbert imposed by the judgment referred to, and that its meaning could not be so extended as to amount to an authorization to Hurt to pay all taxes which might be due or to become due from the Gilberts, on account of all property then or theretofore owned by them.

If they had intended to invest Hurt with such a power, it would not have been necessary further to expressly authorize him to pay the taxes on the property covered by the trust deed.

The court permitted the jury to consider such taxes as were paid on lots 8, 9, 10 and 11, in block 143, and on lots 6 and 7, block 626, and under the circumstances stated in the charge this was proper; but this was the utmost limit of his right.

The notice of the sale under the trust deed was made in "The Galveston Civilian," and the trust deed required that the notice should be given, for the time prescribed, in a newspaper published in the city of Galveston.

The answer denies that the Galveston Civilian was a "newspaper," and asserts that the "only pretended notice of said sale was caused to be inserted in a sheet of paper printed in the city of Galveston, but having no circulation, containing no news, and that no notice was given of said sale thereby."

The evidence tends to show that the Galveston Civilian is a paper of but small circulation, containing items of general news, but that it was very generally used for the purpose of publishing such notices and citations as became necessary in the course of judicial proceedings, and other like notices; and so, mainly for the reason that its rates for publication were lower than those of other newspapers published in the city. Proof was heard as to the character of the paper in which publication was made, and the court, in a very fair charge, submitted to the jury the question whether it, within the meaning of the term "newspaper" as defined in the charge, was such a paper.

It is urged that this question should not have been submitted to the jury, but should have been decided by the court. We are of the opinion that this proposition cannot be sustained. What constitutes a "newspaper," as that term is used in the trust deed, is a matter of law; but whether a given paper is so published and circulated, and contains such matter as to constitute it a newspaper, is a question of fact, like any other fact, to be determined, under a proper charge, by a jury, or by the court if no jury be demanded.

The charge was a very clear exposition of the law as to what constitutes a newspaper, and the evidence would fully have justified the finding that such was the character of "The Galveston Civilian." Kerr v. Hitt, 75 Ill., 53; Kellogg v. Carrico, 47 Mo., 158; Hernandez v. Drake, 81 Ill., 37; Wade on Notice, 1066.

Cases of this character, however, are not always to be determined as to the validity of the notice of a sale by the simple inquiry whether the notice of sale was given through a paper which is in a legal sense a newspaper; for this may be true, and yet the manner of publication, the situation of the paper, its circulation and its capacity to disseminate information, dependent upon many facts, may be such as to render it an improper medium through which to give notice of such sales. When the maker of a trust deed does not designate the newspaper or other medium through which notice

of sale is to be given, but leaves that to the discretion of the trustee or *cestui que trust*, it ought to appear very clearly that such discretion has been abused and that thereby injury has resulted to the grantor before a court would be authorized to set the sale aside; but the abuse of such discretion by the selection of a newspaper through which reasonably full notoriety of the sale is not given would be sufficient if the property is thereby caused to sell for a sum greatly less than its value, to justify a court of equity in setting it aside, if asked to do so within a reasonable time, and especially so if the beneficiary under the trust deed is the purchaser.

The rule is thus stated: "If no specific directions are given in the power as to where notices are to be posted, or in what newspaper publication is to be made, the mortgagee must use a fair and honest discretion in posting the notices, or in selecting the newspaper in which to insert notice of the sale. If the notices of sale were posted in remote or isolated places, where they would be seen by few persons, and where they would give no publicity to the sale and incite little competition, or if they were inserted in an obscure newspaper in an obscure manner, or if they were in a remote newspaper, it would be strong evidence of fraud and the sale would be set aside." Perry on Trusts, 602q.

The principle here asserted is wholesome; its observance will promote fair dealing and prevent wrong, and is well sustained by authority. Johnson *v.* Eason, 3 Ired. Eq., 334; Singleton *v.* Scott, 11 Iowa, 599; Jencks *v.* Alexander, 11 Paige, 624–627; Graham *v.* King, 50 Mo., 23; Perry on Trusts, 602x.

The thirteenth assignment has been considered under the twelfth, and need not be further considered.

A consideration of the sixteenth assignment would involve a consideration of the facts bearing on the question of the validity of the sale made under the trust deed, and as the judgment will have to be reversed on account of matters first considered which may have had an undue influence on the jury, it is not deemed proper to discuss the facts bearing on that question.

The same is true of the nineteenth assignment, and the consideration of the seventeenth assignment becomes unimportant.

The judgment is reversed and the cause remanded.

                                    REVERSED AND REMANDED.

[Opinion delivered February 20, 1885.]