## STEPHENSON et al. v. MALLETT et al. (No. 749.)

(Court of Civil Appeals of Texas. Beaumont. April 4, 1922. Rehearing Denied April 26, 1922.)

**1. Acknowledgment ⬤6(3)—Homestead ⬤118(2)—Conveyance of interest is not valid unless wife joins, and her acknowledgment is separately taken.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1115, the conveyance of the community homestead is not valid unless the wife joins in the conveyance, and unless her acknowledgment is separately taken in the manner required by article 6802.

**2. Acknowledgment ⬤37(2)—Deed must be explained to wife, who must be asked, if she retracts, to make her acknowledgment valid.**

Before the acknowledgment by the wife to a conveyance of the community homestead can be sustained, it must appear that the officer who took the acknowledgment explained to the wife the character of the instrument, and inquired whether she desired to retract it.

**3. Homestead ⬤129(1)—Innocent purchaser must not know of defect in wife's acknowledgment, and must have paid valuable consideration.**

To entitle a subsequent purchaser to a community homestead, notwithstanding defects in the wife's acknowledgment, on the ground that he is an innocent purchaser, it must appear that he purchased in good faith, without notice, actual or constructive, of the invalidity of the wife's acknowledgment, and that he paid a valuable consideration at the time he purchased.

**4. Homestead ⬤133—Burden of proving subsequent purchaser is not innocent is on homestead owner.**

In an action to cancel a conveyance of mineral rights in a community homestead because of defects in the acknowledgment by the wife, the burden is on plaintiffs to show that a subsequent purchaser of the homestead was not an innocent purchaser, though the homestead owners were in possession at the time of his purchase.

**5. Homestead ⬤133—Deposition of subsequent purchaser held to sustain jury's finding he did not pay consideration.**

A deposition of subsequent purchaser taken on behalf of plaintiffs in an action to cancel a conveyance of a community homestead, in which the purchaser stated he did not know whether he paid the consideration recited in the deed to him at the time of the conveyance, because he and his grantor were engaged in several deals, and frequently would wait until they were consummated, and then settle the amount owing from one to the other, *held* so evasive as to sustain, under the circumstances disclosed thereby, a finding by the jury that the purchaser had not paid valuable consideration.

**6. Homestead ⬤118(3)—Conveyance of minerals in homestead a conveyance of interest therein.**

A conveyance of all the minerals in a homestead with right to enter and mine or drill for them is a conveyance of an interest in the homestead which must be signed and separately acknowledged by the wife to be valid.

Appeal from District Court, Liberty County; J. L. Manry, Judge.

Suit by D. Mallett and others against W. M. Stephenson and another, to cancel deed. Judgment for the plaintiffs, and defendants appeal. Affirmed.

W. H. Kennon, of San Antonio, for appellants.

J. Lewellyn, of Liberty, T. L. Foster, of Beaumont, and G. P. Dougherty, of Houston, for appellees.

HIGHTOWER, C. J. Demostand Mallett and his wife, Alecia Mallett, on January 24, 1911, owned two contiguous tracts of land in Liberty county, one of 97 acres and the other of 10 acres, which tracts together constituted at said time the rural homestead of Mallett and wife, and was occupied by them as such. On said date they executed and delivered to W. M. Stephenson the following instrument:

"The State of Texas, County of Liberty.

"Know all men by these presents:

"That this indenture made and entered into this the 24th day of January, 1911, by and between Demostand Mallett and Alecia Mallett, his wife, of the county of Liberty, state of Texas, U. S. A., hereinafter called the parties of the first part, and W. M. Stephenson, of the county of Hardin, and state of Texas, hereinafter called the party of the second part, witnesseth:

"That Demostand Mallett and Alecia Mallett, his wife, of Liberty county, Texas, U. S. A., parties of the first part, for and in consideration of the sum of two hundred and fifty shares of the capital stock of the Comet Oil Company of the par value of one ($1.00) dollar per share, which is fully paid and forever nonassessable, the receipt of which stock is hereby specifically acknowledged, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey unto W. M. Stephenson, party of the second part, his executors or assigns, all of the oil, gas, asphalt, zinc, lead, silica, silicon, coal, gold, silver, tin, iron, salt, fire clay, sulphate of lime, carbonate of lime, or any form of petroleum or mineral gas, and any and all minerals or gases or substances of a

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

valuable nature, in or under the land described below, together with the rights of ingress and egress at all times to the said party of the second part, his executors, assigns, personal representatives or employees, for the purposes of drilling and mining and operating for oil, gas, water, coal, or other minerals and to conduct all operation and to lay all pipe lines, to build all tanks, or other appliances necessary for the production, storage, mining, transportation or refining, etc., of oil, gas, coal, asphaltum, or any other mineral or valuable substance or the by-products of same.

"In consideration of the use of the said premises for the purposes of mining, storing, and transporting the said minerals and of the rights of way over and across the said premises as herein described, the said party of the second part agrees to give to the said parties of the first part:

"First. Five (5%) per cent. of all oil produced and saved from said premises when any well shall be a paying, producing well to be delivered into the pipe lines, to the credit of the said parties of the first part free of charge, but at their own risk, should any loss be sustained, by reason of lightning, tornadoes, or fires or any of the acts of God or nature.

"Second. If any coal is found the said party of the second part agrees to pay to the said parties of the first part the sum of four (4¢) cents per ton of 2,240 pounds for every ton of coal that is mined on the premises when marketed, payable monthly.

"Third. If any gold, silver, copper, zinc, lead, sulphur or salt is found the said party of the second part agrees to pay to the said parties of the first part five (5%) per cent. of the net profits each year, payable annually at the office of the operating company.

"The said parties of the first part shall have the privilege of using gas free of charge for household or domestic purposes only from any well on the premises, by making their own connections, and it is hereby agreed and understood that the said parties of the first part accept gas at their own risk, and, should any loss be occasioned by reason of explosion, fire, etc., from any well, tank, mine, pipe line, or factory occur on the premises or adjoining thereto, then the said party of the second part or its assigns shall not be liable for such damages sustained by the said parties of the first part, their employees, or any one connected with the household. And the said party of the second part or his assigns shall have the right to erect on the premises all necessary buildings, offices or any dwelling to be used by himself, his agents or employees and shall have the right to subdivide and release the said tract of land which is described as follows: [Here folfollows sufficient and proper description of the land in controversy.]

"It is hereby further agreed to that the certificate of stock herewith delivered shall share equally with other stock in the profits, earnings and dividends of the Comet Oil Company which may be derived from all of the wells or mines operated by them, and the said stock, together with the dividends thereon, is hereby accepted by the said first parties in lieu of the development of the said above-described property.

"To have and to hold the above-described premises, together with all and singular the mineral rights the appurtenances thereto in any wise belonging unto the said W. M. Stephenson, his heirs and assigns forever.

"And we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend, all and singular, the said mineral rights and the use of said premises as herein conveyed unto the said party of the second part, his heirs or assigns against any person whomsoever lawfully claiming or to claim the same or any part thereof.

"The said parties of the first part are to fully use and enjoy the said premises for the purpose of cultivation or pasturage, except such parts as shall be necessary for drilling and mining purposes and rights of way over and across the said premises to the place of drilling or operations and for dwellings, offices or houses incidental to the operation and mining of said property, and the said party of the second part or his assigns shall have the right to remove any machinery, fixtures, buildings, pipe lines, tanks, etc., or any other appurtenances that he or his assigns shall have put thereon, from the premises at any time without liable to the said parties of the first part for damages, the said party of the second party shall not put down or operate any well for oil or other minerals within fifty (50) yards of the buildings now on said premises without the consent of both parties to this contract.

"Whenever the said parties of the first part shall request it, the said party of the second part shall bury all oil and gas lines and shall pay for damages done to growing crops by reason of burying and removing said pipe lines.

"In case artesian water is found on said premises the said parties of the first part shall be entitled to free use of same by making their own connections over and above that needed by the said party of the second part in the operation of machinery and mining, etc., and in case artesian water is found, and no oil or gas or other mineral or valuable substance, and said well is abandoned by the said party of the second part, then, and in that event, the said parties of the first part shall be entitled to the same for their own use and benefit, but the said party of the second part shall not be at any expense in conducting and connecting said water for the use of the said parties of the first part.

"It is further agreed and understood that all the conditions between the parties hereto shall extend to their personal representatives, heirs, executors and assigns.

"In witness whereof, the said parties of the first part, and the said party of the second part have hereunto set their hands and affixed their seals at the place and on the day and year above written.

"Demostand X Mallett.
his
mark

"Alecia X Mallett.
her
mark

"Signed in the presence of Willie Meloncon, Jimmie Canter, W. M. Stephenson."

The above instrument purports to have been duly acknowledged by Mallett and wife before A. L. Moor, a justice of peace and ex officio notary public, on the same day of its

execution, and the same was duly recorded in the Deed Records of Liberty County two days later.

On July 7, 1919, W. M. Stephenson, for the recited consideration of $500 in cash, executed to R. C. Napier a general warranty deed, purporting to convey to Napier the east one-half of each of the tracts described in the instrument from Mallett and wife to Stephenson. This deed was duly recorded July 26, 1919.

At some date now shown by the record, but subsequent to April 7, 1916, Alecia Mallett died, leaving surviving her said husband and several of their children and two grandchildren. After Alecia's death Demostand Mallett married again, and he and his present wife and the children and grandchildren of Alecia filed this suit in the district court of Liberty county on July 29, 1919, against Stephenson and Napier for the purpose of having canceled by decree of the court the instrument executed by Demostand and Alecia Mallett to Stephenson, and also to have canceled the deed from Stephenson to Napier. The plaintiffs, as grounds for such cancellation, pleaded fraud on the part of Stephenson which induced Mallett and wife to execute the instrument to Stephenson; also that there was no consideration for that instrument; and also that the instrument was void for the reason that the wife's acknowledgment was not taken as required by law, in that the officer who purported to take the same did not explain to the wife the nature of the instrument, and that she did not otherwise understand its nature, and that she was not asked by the officer whether or not she wished to retract, etc. And, in connection with the last ground, it was fully alleged that the two tracts of land conveyed by the instrument at the time of such conveyance constituted the homestead of Mallett and wife.

The specific grounds of fraud relied upon for the cancellation of the instrument were, substantially: (1) That Stephenson represented to Mallett and wife that the instrument was a mere lease, and that it could not in any event affect the land for a longer period than five years, unless a well should be drilled thereon which would produce and continue to produce oil in paying quantities; (2) that Stephenson represented to Mallett and wife that it was provided in the instrument that he would drill or cause to be drilled an oil well on said land within 90 days from the date of the instrument, and that, upon failure to do so, the lease would be void, but that, if oil should be found on said land, Mallett and wife would receive a one-eighth royalty of all oil produced therefrom; (3) that Mallett and wife were both ignorant negroes, and both of them unable to read or write the English language, or to intelligently understand the same, which

facts they alleged Stephenson well knew; (4) that such representations and statements on the part of Stephenson as to the character and contents of the instrument were willfully and knowingly false, and were made by him for the purpose of inducing Mallett and wife to execute the instrument, and that they executed the same believing such false and fraudulent representations to be true.

As to the plea of lack of consideration for the instrument, the plaintiffs alleged substantially that the shares of stock of the Comet Oil Company mentioned in the instrument as the consideration for same were never, in fact, delivered to Mallett and wife, or either of them, and that no other consideration whatever was ever received by them for said instrument, but that, on the contrary, it was never the intention of Stephenson to deliver said shares of stock to Mallett and wife, and that the promise to do so, as contained in the instrument, was made merely for the purpose of inducing Mallett and wife to execute the instrument.

Plaintiffs then further alleged that the instrument was void also because the property conveyed by the instrument constituted the rural homestead of Mallett and wife at the time of its execution, and that the officer taking the separate acknowledgment of Alecia did not explain to her the character of the instrument, and that she was not asked by him whether she wished to retract the same, and that for both reasons the instrument was absolutely void. Plaintiffs then alleged substantially that, at the time Napier took the conveyance from Stephenson to the east one-half of the two tracts of land involved, he did so with notice, both actual and constructive, of all the fraud perpetrated by Stephenson in procuring the instrument of January 24, 1911, from Mallett and wife, and also that he had both actual and constructive notice of the invalidity of the deed to Stephenson on account of lack of proper acknowledgment by Alecia, and also that Napier did not pay a valuable consideration for such deed to him.

The plaintiffs prayed that both the instrument from Demostand and Alecia Mallett to Stephenson and the deed from Stephenson to Mallett be canceled, and that the cloud upon the title constituted thereby be removed, and for judgment generally for the title and possession of the tracts of land involved.

The defendants, Stephenson and Napier, filed a joint answer, consisting of a general demurrer and several special exceptions, general denial, plea of not guilty, specific denial that there was any fraud perpetrated by Stephenson in procuring the instrument from Mallett and wife, a plea of limitation of the statute of four years, and Napier specially pleaded, in addition, that he was an innocent purchaser for valuable consid-

eration. Both defendants also interposed a plea of estoppel against certain of the plaintiffs, who claim and assert an interest in the land under and through Demostand and Alecia Mallett by conveyances subsequent in date to the conveyance to Stephenson, and also subsequent to its record. One of such plaintiffs is the appellee Joe Mallett, who asserts title to 20 acres out of the 97-acre tract under a general warranty deed from Demostand and Alecia Mallett of date August 7, 1915, and others of the plaintiffs, who are appellees, claim under leases from Joe Mallett. The other appellees here, Sun Company, Humble Oil Company, and Magnolia Petroleum Company, claim under leases through a lease executed by Demostand and Alecia Mallett to Robert J. Eckhardt, of date April 7, 1916, at which time, as we have shown above, the conveyance to Stephenson was of record. The three appellees last mentioned came into the case as plaintiffs below upon the prayer of defendants, Stephenson, and Napier, that they be made parties, and as such plaintiffs they set up the interest claimed by them respectively, and adopted all the allegations of the original plaintiffs made the basis for cancellation of the conveyance to Stephenson, as well as those made the basis for the cancellation of Stephenson's deed to Napier, and they prayed that their titles and claims in the land be quieted as against Stephenson and Napier and the cloud be removed, etc.

The case was submitted to the jury upon special issues, and the verdict as a whole consisted of the following findings made by the jury:

(1) That Stephenson represented to Mallett at the time of the execution of the instrument to Stephenson that such instrument was a lease.

(2) That Stephenson represented to Mallett that such instrument could not, in any event, remain in force, or affect Mallett's title to the land, for a longer period than five years, unless oil was produced in paying quantities.

(3) That Stephenson represented to Mallett that the instrument provided that the drilling of a well would have to be begun on the property within 90 days from the date thereof.

(4) That Stephenson represented to Mallett that said instrument provided that Mallett was to get one-eighth of all the oil or other minerals that might be produced.

(5) That the representations so made by Stephenson as to the character and provisions of the instrument caused Mallett to execute the instrument.

(6) That Stephenson did not, nor did any one for him, deliver to Mallett the shares of stock of the Comet Oil Company mentioned in said instrument.

(7) That the notary who took Alecia Mallett's acknowledgment to the instrument did not explain to her the contents of the same.

(8) That Alecia Mallett was not asked by the notary in taking her acknowledgment whether she wished to retract the instrument.

(9) That a person of ordinary prudence, exercising reasonable diligence, placed in the position of D. Mallett, would not have discovered the adverse claim of Stephenson to the property in controversy on or before July 29, 1915.

(10) That Napier did not pay a valuable consideration for the conveyance to him by Stephenson.

(11) That, at the time of the acceptance of the deed by Napier from Stephenson, Napier was in possession of such facts as would have caused an ordinarily prudent person to make inquiry as to the claim of Mallett to the property.

Upon the jury's verdict judgment was entered in favor of plaintiffs for the title and possession of the land involved, and for cancellation of the instrument from Mallett and wife to Stephenson, and also for cancellation of the deed from Stephenson to Napier, and for removal of cloud, etc., cast by such instruments. From this judgment both Stephenson and Napier have appealed, presenting a number of assignments of error, under which they make the following contentions:

(1) That as a matter of law, under plaintiffs' pleading and evidence, their cause of action was barred by the statute of limitation of four years.

(2) That each and all of the parties plaintiff who acquired by purchase an interest in the subject-matter after the record of the Stephenson-Mallett deed were concluded thereby, and were legally and equitably estopped to deny its binding force and effect as to them and their respective interests.

(3) That plaintiffs wholly failed to sustain the burden of showing that the defendant Napier had notice of the alleged vice in the Stephenson deed, or that he did not pay value, but that, on the contrary, plaintiffs' testimony (consisting alone of the deposition of Napier) affirmatively showed that Napier had no notice of the alleged vice in the Stephenson deed and paid a consideration deemed valuable in law.

(4) That, over objection of defendants, the issues relating to the interest of the defendant Napier were not submitted in conformity with the pleading of the plaintiffs.

(5) That the answers of the jury to the effect that Napier did not pay a consideration deemed valuable in law and did not pay or obligate himself to pay the consideration recited in his deed are wholly unsupported by and directly contrary to the undisputed evidence.

(6) That issue No. 9 was not submitted in

conformity with the pleadings, and was a charge upon the weight of the evidence, in that the court assumed, without anywhere submitting it to the jury, that Mallett did not know of or discover the claim of Stephenson to the property prior to July 29, 1915.

In the view we take of this case, it becomes wholly unnecessary to determine the contentions made by the first and sixth propositions, both of which relate to the alleged fraud on Stephenson's part in procuring the execution of the conveyance from Mallett and wife of January 24, 1911, For, in the absence of such issue of fraud, the appellees were entitled to the relief prayed for and granted as against appellant Stephenson, if such instrument was void for lack of proper acknowledgment by Alecia Mallett. The undisputed evidence showed that Stephenson was present when such proposed acknowledgment was taken, and, if there was lacking any essential element in such acknowledgment, Stephenson knew it. And, if the instrument was void as to Stephenson, it was likewise void as to Napier, unless at the time he took his conveyance from Stephenson he was an innocent purchaser and paid a valuable consideration therefor.

[1] The evidence in the record before us shows without controversy that the two contiguous tracts of land conveyed by the instrument to Stephenson aggregating approximately 107 acres constituted at the date of such instrument the rural community homestead of Demostand and Alecia Mallett, and that the same was actually used and occupied by them as such, as it had been for many years prior thereto. Such being the character of the property, no valid conveyance thereof could be had without the joinder of the wife in the conveyance and her acknowledgment thereto taken as required by law. Article 1115, Vernon's Sayles' Civil Statutes. And by article 6802, Vernon's Sayles' Civil Statutes, it is provided that—

"No acknowledgment of a married woman to any conveyance or other instrument purporting to be executed by her shall be taken, unless she has had the same shown to her, and then and there fully explained by the officer taking the acknowledgment, on an examination privily and apart from her husband, nor shall [such officer] certify to the same, unless she thereupon acknowledges to such officer that the same is her act and deed, that she has willingly signed the same, and that she wishes not to retract it."

[2, 3] As we view the evidence found in the record on the issue as to whether the wife's acknowledgment was properly taken, it is shown without contradiction that the officer who purported to take Alecia Mallett's acknowledgment to the instrument in question did not explain to her its character or contents, and also the evidence shows without dispute that she was not asked by the officer whether or not she wished to retract her act and deed in executing the instrument. Both these issues were submitted to the jury, as shown above, and the jury found that the officer did not explain to Alecia the instrument, and that she was not asked by him whether she wished to retract the same, and no complaint is made by appellant in this court of such finding by the jury. Therefore we say that, under an unbroken line of decisions of this state construing the articles of the statute above mentioned, the instrument to Stephenson of January 24, 1911, was absolutely void as to Stephenson, who, as we have shown, knew of the invalidity of the wife's acknowledgment, and it was also absolutely void as to Napier, unless he should be protected in his purchase from Stephenson upon the theory that he is an innocent purchaser. In order to be an innocent purchaser, he must have purchased in good faith, without notice, actual or constructive, of the invalidity of the wife's acknowledgment, and also he must have paid a valuable consideration for such instrument at the time he purchased from Stephenson.

[4] In view of the decision of Eylar v. Eylar by the Supreme Court of this state, 60 Tex. 315, followed by the cases of Hurt v. Cooper, 63 Tex. 362, Love v. Breedlove, 75 Tex. 652, 13 S. W. 222; Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37, and Hunter v Hale, an opinion by this court, reported in 233 S. W. 1005, we hold that the burden of proof as against Napier's defense of innocent purchaser rested upon the plaintiffs in this case, notwithstanding Mallett and wife were in actual possession of the property at the time Napier purchased from Stephenson.

[5] But we are also of the opinion that that burden was sufficiently discharged by the plaintiffs, in that the evidence was sufficient to show, in our opinion, that Napier did not pay a valuable consideration at the time he purchased his interest in the property from Stephenson. Napier's evidence is the only evidence in the entire record upon that issue, and he testified by deposition only, which was taken by the plaintiff shortly after this suit was filed. In this deposition Napier was asked, substantially, whether or not he paid to Stephenson the $500 consideration mentioned in his deed from Stephenson at the time of such purchase. To this Napier answered, substantially, that he could not remember whether he paid such consideration or not, but that, if he had not paid Stephenson such consideration as recited in the deed, he was under obligation to do so. He stated in the same connection that about that time he and Stephenson had several deals in which they were mutually interested, and that sometimes they would carry these several deals together or continue negotiations and close them all up at once and

settle as between themselves; that for such reasons he was unable to say whether or not he ever paid Stephenson for the conveyance here in question. Again, and further on in the depositions, he was asked, substantially, to state whether he paid money to Stephenson for the conveyance to him, or whether he gave Stephenson a check or draft, and, if he did not pay by money or check or draft, to state whether he executed a note in favor of Stephenson, and he was asked, in the event he paid by draft or check, to state the bank upon which the check was drawn, etc. Napier's only reply to this second attempt in the interrogatories to elicit whether or not he had paid value for the land was: "I consider that I have answered that above."

It was shown that Napier and Stephenson are first cousins, and at the time of the taking of Napier's deposition he states that there was some relation of partnership between them. It was further shown, without dispute, by Napier's own deposition, that he had never seen the land in controversy, and it is not shown by any testimony in the record that he had any knowledge whatever of the character of the land or of any probability that it was mineral bearing. Napier admitted in his deposition that he had not seen an abstract of title before he purchased, nor had he any legal advice as to the state of the title he was purchasing, nor had he even seen the original instrument from Mallett and wife to Stephenson, or any copy thereof. He, above all others, unless it be Stephenson, was in a position to know whether he had ever paid Stephenson anything for the conveyance, and the character of such payment, and the question was put directly to him in several ways by the plaintiffs in this case in the interrogatories propounded to him, and it is clear to us that he evaded answering such interrogatories. It is unreasonable to presume or suppose that in so short a time elapsing between the date of the instrument to him from Stephenson and the taking of his deposition in this case he could have forgotten whether or not he had paid Stephenson anything for the instrument, and how such payment was made. Taking into consideration the relationship existing between Stephenson and Napier—the fact that Napier was in a position to know whether or not he paid any consideration to Stephenson deemed valuable in law for the conveyance to him, the evasive manner in which he answered the interrogatories propounded to him on the issue—we have concluded that the jury was warranted in finding that Napier did not pay a valuable consideration for the conveyance to him by Stephenson, and that therefore Napier cannot be protected on the theory that he is an innocent purchaser as against the invalidity of the deed to Stephenson.

These conclusions on our part render it unnecessary to discuss any other features of the case.

[6] Thus far we have assumed that the character of the conveyance from Mallett and wife to Stephenson, as we have quoted it above, was such as required a proper separate acknowledgment on the part of the wife to give it validity, because we have no doubt that the instrument constitutes an absolute conveyance of an interest in the homestead itself, and under the law as announced in Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169, such conveyance is absolutely void by reason of the invalid acknowledgment of the wife, Alecia Mallett. The decision mentioned was by the Court of Civil Appeals for the Fifth District, but a writ of error was denied by the Supreme Court, and the decision, therefore, stands as a decision of the Supreme Court itself. There can be no doubt about the correctness of our conclusion that Southern Oil Co. v. Colquitt was fully approved by the Supreme Court, for in Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989, Chief Justice Phillips, alluding to Southern Oil Co. v. Colquitt, among other things, said:

"This court refused the writ of error. It could have done so only under the view that the interest created by the instrument was an interest in the realty itself, requiring for its validity the joinder of the wife, because of the homestead character of the realty."

It seems to us entirely unnecessary to discuss or even mention any other contention made by appellants in this court, because, if we are correct in the views thus far expressed, the judgment of the trial court was correct, and should be in all things affirmed; and it is accordingly so ordered.