## HUNTER et al. v. HALE. (No. 620.)

(Court of Civil Appeals of Texas. Beaumont. July 2, 1921. Rehearing Denied Oct. 12, 1921.)

1. Vendor and purchaser ⬅➡257—Superior legal title in vendor where deed reserves lien.

A deed to vendee reserving a vendor's lien is an executory contract, and the superior legal title remains in the vendor.

2. Deeds ⬅➡183—Vendor and purchaser ⬅➡85 —Where unrecorded deed reserving vendor's lien was redelivered and notes canceled, contract was rescinded, and title reconveyed.

Where deed reserving vendor's lien for balance of purchase price had not been recorded, it was an executory contract, and was rescinded by the return of the deed to the vendor and the vendor's cancellation of notes for the purchase price pursuant to the parties' understanding that the transaction should constitute a rescission; the transaction having the effect, in equity, to reconvey to the vendor all right, title, and interest that the deed had vested in the purchaser.

3. Trespass to try title ⬅➡40(4)—No error in exclusion of deed by plaintiff to third party who never accepted it.

In an action of trespass to try title, though defendant may prove the existence of an outstanding title superior to plaintiff's, the court did not err in refusing 'to admit in evidence a deed by plaintiff to a third party who, the evidence showed, never accepted it.

4. Vendor and purchaser ⬅➡232(5, 6)—Innocent purchaser may recover where defendants' deed to predecessor in title properly recorded, though defendants remained in possession.

Where plaintiff, before purchasing, was assured by an attorney that title to the land was good in defendants, by whom it was subsequently conveyed to plaintiff's predecessor in title, and plaintiff did not know that such deed was intended only as a mortgage, and at the time he bought such deed, as well as that from the grantee thereunder to plaintiff's immediate grantor, was duly recorded, plaintiff was entitled to protection as an innocent purchaser, though defendants remained in possession; for a purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title when he finds recorded in the proper county a deed from such vendor properly proved and registered.

5. Courts ⬅➡91(1) — Decisions of Supreme Court binding on Court of Civil Appeals despite contrary decisions of other such courts.

Decisions of the Supreme Court settling a question of law are binding on the Court of Civil Appeals despite contrary decisions by other Courts of Civil Appeals.

Error from District Court, San Jacinto County; J. L. Manry, Judge.

Action by W. B. Hale against William Hunter and another. Judgment for plaintiff, and defendants bring error. Affirmed.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

J. V. Lea and Jacob C. Baldwin, both of Houston, for plaintiffs in error.

E. W. Love, of Cleveland, and J. F. Stevens, of Houston, for defendant in error.

HIGHTOWER, C. J. This case comes here by writ of error, but the parties will be referred to hereinafter as the appellants and appellee.

The suit was filed by the appellee, W. B. Hale, against Wm. Hunter and Ed Hunter, the appellants, in form of trespass to try title to approximately 88 acres of land in San Jacinto county. Appellants answered by plea of not guilty, by special plea of title in themselves by purchase from one J. M. Hansbro, and further alleged that certain muniments of title relied upon by appellee, in the form of absolute deeds, were intended merely as mortgages and were void, etc.; and they further raised issues which are unnecessary here to mention, in view of the disposition we have concluded to make of the case.

The case proceeded to trial in the lower court without a jury, and resulted in a judgment in favor of the appellee, Hale, against both appellants, for all the land claimed by the appellee. The trial judge prepared and filed findings of fact and conclusions of law, and the findings of fact are sufficiently full to clearly indicate and serve as a statement of the nature, etc., of the case. These findings are as follows:

### "Findings of Fact.

"I find, according to the agreement of the parties, that common source of title is deraigned from J. M. Hansbro, who owned the land in controversy prior to the 1st day of November, 1897, when he executed to the defendant William Hunter a deed conveying 59 acres of land off the east end of the 88-acre tract in controversy in this cause, which deed contained an express reservation of a vendor's lien to pay certain purchase-money notes to the said J. M. Hansbro or order, to wit: $60 to be paid on or before November 1, 1898; $60 to be paid on or before November 1, 1899; $60 to be paid on or before November 1, 1900; $60 to be paid on or before November 1, 1901 —together with 10 per cent. interest per annum. This conveyance recited a cash consideration of $60. I find that the said deed was delivered by J. M. Hansbro to William Hunter, but was never placed of record, and that afterwards, to wit, about the 1st day of January, 1909, the said William Hunter having failed to pay any of the purchase-money notes or interest thereon executed as aforesaid to J. M. Hansbro, it was agreed between the said William Hunter and J. M. Hansbro that the sale be rescinded, and the deed securing the said vendor's lien was returned by the said William Hunter to the said J. M. Hansbro, and the latter canceled the said purchase-money notes of the said William Hunter; it being understood by the parties that the said J. M. Hansbro would reconvey to the defendant Ed Hunter the land in controversy, so as to in-

clude the 50 acres previously conveyed to William Hunter by the said J. M. Hansbro, and that on said 1st day of January, 1909, the said J. M. Hansbro, for a recited consideration of $80 in cash and three promissory notes secured by vendor's lien in the sum of $200 each, falling due respectively upon the 1st days of January, 1910, 1911, and 1912, with 8 per cent. per annum from date, conveyed said land to Ed Hunter by a deed reserving an express vendor's lien to secure the payment of said purchase-money note.

"II. I further find that J. M. Hansbro assigned the said vendor's lien notes, executed as aforesaid by Ed Hunter to J. M. Hansbro, to R. B. Love, and that after the said R. B. Love became the owner of said notes, on, to-wit, the ——— day of February, 1913, Ed Hunter, without being joined by his wife, conveyed the property in controversy to R. B. Love by an instrument containing the following recital: 'For and in consideration of the sum of six hundred dollars ($600.00) to me in hand paid by R. B. Love, and the surrender to me, canceled, of those three certain promissory notes dated February 1, 1909, in the sum of two hundred dollars ($200.00) each, executed by me in the payment of the tract of land hereinafter described and payable to J. M. Hansbro or order on or before the 1st day of January, A. D. 1910, 1911, and 1912, respectively, and which said notes are valid and subsisting and unsatisfied vendor's lien on the herein described land,' etc.—and that afterwards, to wit, on the same date, the said R. B. Love reconveyed the property in controversy to William Hunter and Ed Hunter by an instrument containing the following recital: 'For and in consideration of the sum of $600.00 to me paid and to be paid by Wm. Hunter and Ed Hunter as follows, to wit: $235.21 paid to me in cash, the receipt of which is hereby acknowledged; $182.40 to be paid on or before the 1st day of February, A. D. 1913; $182.40 to be paid on or before the 1st day of November, A. D. 1914, and is shown and evidenced by two certain promissory notes executed by the said William and Ed Hunter of even date with this deed, payable to R. B. Love or order with 10% interest from date until paid, and providing for 10% attorneys' fees, etc.' But express vendor's lien was retained in said deed to secure the payment of said notes.

"III. I further find that on the 29th day of August, 1915, the defendant Ed Hunter, without being joined by his wife, reconveyed the property in controversy to R. B. Love by an instrument containing the following recitals: 'That in consideration of the cancellation and satisfaction of one-half of the amount due on the two certain notes executed by myself and my father, Wm. Hunter, to R. B. Love, in purchase of the tract of land hereinafter described, said notes dated February 1, 1913, and being in the sum of $182.40, conveyed and sold said property to said R. B. Love.'

"IV. I find that on the 20th day of September, A. D. 1915, the defendant William Hunter and his wife, Amenda Hunter, executed to J. C. Hogue a deed conveying to said Hogue their undivided interest to the land in controversy, and that this deed recited a cash consideration of $319 and the assumption of the amount due by the grantors to R. B. Love, the vendor in

the deed set forth in paragraph 2 of these conclusions of fact.

"V. I find that the said $319 mentioned as the cash consideration in the deed from William Hunter and wife to J. C. Hogue represented a like amount which William Hunter owed to the Sheperd State Bank, for which amount the said J. C. Hogue had become surety, and it was understood between the parties to said deed that when William Hunter paid off and discharged the said note in the sum of $319 that the said J. C. Hogue would reconvey the property to William Hunter.

"VI. I find that afterwards, to wit, on the 6th day of December, 1915, the said J. C. Hogue conveyed the property to R. B. Love by an instrument which recited a cash consideration in the sum of $225.65, and that R. B. Love actually paid the said cash amount to J. C. Hogue, and that at the time of the conveyance from the said J. C. Hogue to R. B. Love the said R. B. Love had no knowledge or notice whatever that the transaction between William Hunter and wife and J. C. Hogue, at the time of the conveyance to the latter, contemplated that the land would be reconveyed to the said William Hunter when the note above set forth of $319 was discharged by the said William Hunter.

"VII. I find that on the 27th day of July, 1918, the said R. B. Love conveyed the property in controversy to the plaintiff, W. B. Hale, for a consideration of $2,000, which consideration was paid by two negotiable promissory notes of the said William B. Hale in the sum of $1,000 each, bearing 8 per cent. interest per annum from date, and due respectively in one and two years from the date of said conveyance.

"VIII. I further find that the said W. B. Hale, at the time of the execution of said deed from R. B. Love and the execution of said notes, was solvent and is solvent at this time, and that said notes of W. B. Hale were, at the time of the execution of said deed, as negotiable paper upon the market, worth their face value.

"IX. I find that prior to the purchase of the land in controversy the said W. B. Hale made inquiry of a lawyer, who was understood to be familiar with the title of the land in controversy, as to the condition of the title, and that the lawyer advised the said Hale that the title was good, and that the said Hale, at the time he purchased the land from R. B. Love, had no notice or knowledge whatever that J. C. Hogue had agreed to reconvey the property to William Hunter, and that he relied upon the advice given him by the lawyer and upon the record title, and he had no notice whatever of any claims that might exist in favor of either of the defendants.

"X. That all deeds set forth in the foregoing paragraphs were duly recorded at the times of their respective executions upon the deed records of San Jacinto county, Tex., with the exception of the deed from J. M. Hansbro to William Hunter, which was returned to said J. M. Hansbro as above set forth.

"XI. That at the time of the execution of the deed by Ed Hunter to R. B. Love, of date the 29th day of August, A. D. 1915, the vendor's lien notes, together with the interest thereon, of date the 1st day of February, 1913, which had been executed by Ed Hunter to R.

B. Love, were still outstanding and unpaid, and that at the time of the execution of the deed from William Hunter and wife to J. C. Hogue on the 20th day of September, A. D. 1915, and at the time of the execution of the deed from J. C. Hogue to R. B. Love, on the 6th day of December, A. D. 1915, the said vendor's lien notes executed by William Hunter to R. B. Love on the 1st day of February, 1913, together with interest thereon, were outstanding and unpaid, and that the said Ed Hunter and William Hunter have never paid the purchase-money notes set forth in the deed from R. B. Love to William Hunter, of date the 1st day of February, 1913.

"XII. I further find that at the time of the execution of the aforesaid deeds by Ed Hunter to R. B. Love, and by William Hunter to J. C. Hogue, that the property in controversy constituted a part of the homestead of the defendants, Ed Hunter and William Hunter.

"XIII. I find that at the time of the execution of the deed by Ed Hunter to R. B. Love mentioned in the third paragraph of these conclusions of fact that the said R. B. Love was the owner and holder of the vendor's lien notes therein described, and that the said R. B. Love was the owner and holder of the vendor's lien notes which were executed by Ed Hunter and William Hunter to himself at the time of the conveyance by William Hunter and wife to J. C. Hogue mentioned in the fourth paragraph of the conclusions of fact, and that when J. C. Hogue conveyed the property to R. B. Love, as set forth in the sixth paragraph of these conclusions of fact, the said R. B. Love was still the owner and holder of the notes in so far as the obligation of William Hunter was concerned, and that the said notes were unpaid with the exception of the cancellation of the same at the time of the last conveyance from said Ed Hunter to said R. B. Love as to the part of said notes owed by the said Ed Hunter.

"XIV. I find that the property in controversy, at the time of the last conveyance by Ed Hunter to R. B. Love, constituted a part of his homestead, and at the time of the conveyance from William Hunter and wife to J. C. Hogue constituted a part of the homestead of William Hunter.

"XV. I find that William Hunter did not pay off the vendor's lien notes held by said R. B. Love, as alleged in the ninth paragraph of his amended answer.

"XVI. I find that R. B. Love did not agree to reconvey the property in controversy to Ed Hunter, as alleged in the eleventh paragraph of the said Hunter's amended answer."

The conclusions of law upon the foregoing findings of fact were as follows:

"I. From the foregoing findings of fact I find that when William Hunter delivered the deed to J. M. Hansbro in 1909, and the purchase-money notes executed by said William Hunter, then held by said J. M. Hansbro, were canceled, and the land was conveyed by said J. M. Hansbro to Ed Hunter, that the same operated as a rescission of the sale which J. M. Hansbro had made to William Hunter in 1897 for the 50 acres of land.

"II. I find that when Ed Hunter reconveyed his interest in the property in controversy to R. B. Love in 1913, the said R. B. Love being the then holder of the vendor's lien notes

which had been previously executed by Ed Hunter to J. M. Hansbro, and R. B. Love reconveyed the property to Ed Hunter and William Hunter, accepting new vendor's lien notes, that this transaction placed the superior title in R. B. Love to the land in controversy, irrespective of the fact that the wife of Ed Hunter did not join with her husband in the execution of said conveyance to R. B. Love.

"III. I find that when Ed Hunter reconveyed the property in 1915 to R. B. Love in cancellation of his part of the vendor's lien notes which had been previously executed to the said R. B. Love that such conveyance placed the title of Ed Hunter in R. B. Love, irrespective of the fact that his wife did not join in such conveyance.

"IV. I find that the act of William Hunter and wife in conveying their interest in the property in controversy to J. C. Hogue estops them from asserting title either against R. B. Love or the plaintiff, W. B. Hale, who were both innocent purchasers under J. C. Hogue of the William Hunter part of the property in controversy, and I further find that W. B. Hale is an innocent purchaser for value without notice of the property in controversy.

"V. I find that Ed Hunter is estopped by his deed to R. B. Love, reciting the cancellation of the vendor's lien notes, from asserting title to the property in controversy against the plaintiff, W. B. Hale.

"I finally conclude that judgment should be rendered providing that the plaintiff recover the property in controversy, together with his costs."

Whilst practically all material findings of fact made by the trial court, as above shown, are attacked by appellants, by proper assignments of error, as being unsupported by the evidence, yet, upon very careful consideration of the evidence found in the record relative to these assignments, we have concluded that none of such assignments can be sustained, except that which challenges the sixth finding of fact, and we adopt all such findings of fact as the findings of this court, with the exception of that portion of the sixth finding to the effect that at the time of the conveyance from J. C. Hogue to R. B. Love, Love had no knowledge or notice that the transaction between William Hunter and wife and Hogue at the time of the conveyance to the latter contemplated that the land would be reconveyed to the said William Hunter when the note of $319 should be discharged by William Hunter. As to this finding of fact, we are of opinion that the trial court was clearly wrong, and that the evidence on that issue clearly preponderated against the finding of the trial court, if, indeed, it was not undisputed.

Our adoption of the court's findings of fact, as above shown, disposes of the third, fourth, fifth, sixth, seventh, eighth, ninth, and sixteenth assignments of error, and all such assignments are overruled, with the exception of the third, which relates to that portion of the sixth finding of fact in which, as we have stated, the court was in error.

The first assignment of error is as follows:

"The undisputed evidence in the case shows that W. B. Hale was not the owner of the property in controversy at the time of filing of the suit, or at the time of the trial, and the trial court erred in rendering judgment in favor of him, and should have rendered judgment in favor of the defendants."

[1, 2] This assignment is submitted as a proposition within itself. Treating the assignment as sufficient, under the rules, to require our consideration, over the objection of appellee, we have concluded that it cannot be sustained. The evidence shows very clearly, in fact without dispute, that William Hunter never paid to J. M. Hansbro more than $60 for the 59 acres of land described in the deed from Hansbro to William Hunter in 1897, and that in 1909, by agreement of all parties concerned, William Hunter returned and redelivered to Hansbro the deed which Hansbro had made him for this 59 acres, and Hansbro thereupon canceled the notes which had been executed by William Hunter for the purchase money of the land. The evidence shows without dispute that the parties understood and agreed that this transaction between them should constitute a complete rescission of the contract by which Hansbro had agreed to convey William Hunter this 59 acres. The deed from Hansbro to Hunter was in the nature of an executory contract, in which an express vendor's lien was retained in the deed to secure Hansbro in the payment of the purchase money, and therefore the superior legal title remained in Hansbro and never passed to William Hunter, and the undisputed proof is that the deed from Hansbro to Hunter was never at any time recorded. The evidence also shows without dispute that Hansbro thereupon, by agreement between himself and William Hunter and Ed Hunter, conveyed the tract of land in controversy to Ed Hunter, and included in the deed and as a part of the 88-acre tract in controversy was the original 59 acres which had been conveyed in 1897, as before stated, to William Hunter. The agreement between Hansbro and William Hunter to rescind the original contract or executory sale of the land between Hansbro and Hunter and their actual rescission of the contract, as before stated, had the effect, in equity, to reconvey to J. M. Hansbro all right, title, and interest that Hansbro's original deed to William Hunter had vested in him. It is well settled in this state that, where a vendor of land reserves an express lien to secure the purchase money, the contract is only executory; and in default of payment of the purchase money by the vendee the vendor may rescind the contract and recover the land, especially so where it would not be inequitable to permit such course. Nass v. Chadwick, 70 Tex. 157, 7 S. W. 828; Summerhill v. Hanner, 72 Tex. 224, 9 S. W.

881; Pitts v. Elsler, 87 Tex. 347, 28 S. W. 518. If the vendor has the legal right to rescind such an executory contract, then certainly he and his vendee, by agreement between themselves, which they carried into execution, may do so, and such agreement will have the effect to revest in the vendor whatever interest had theretofore been in the vendee under the executory contract. Such was the effect of the holding in the case of Terhune v. First National Bank, 24 Tex. Civ. App. 242, 60 S. W. 352. See, also, Cadwallader v. Lovece, 10 Tex. Civ. App. 1, 29 S. W. 666, 917.

[3] No outstanding title was shown by reason of the claimed deed from appellee, Hale, to Jack Love, as administrator of the estate of R. B. Love, deceased. It is true the court did not permit the introduction of this deed in evidence, and its action in that regard was objected to and, brought forward by assignment here; still the evidence was sufficient, if not undisputed, to warrant the trial court in holding that such deed claimed by appellants to have been executed by Hale and delivered to Jack Love was never, in fact, accepted by Jack Love, and therefore no outstanding title was shown against the appellee by reason of the execution of such claimed deed. No useful purpose would be served in discussing this assignment further, and it is overruled.

The second assignment complains of the refusal of the trial court to admit in evidence a deed from the appellee, Hale, to J. F. Love, dated December 11, 1919, purporting to convey the land in controversy to said Love. This deed was offered for the purpose of showing an outstanding title against appellee. Of course, it is always permissible for the defendant in an action of trespass to try title to prove, if he can, the existence of an outstanding title superior to that of the plaintiff, and thereby defeat the action. Buckner et al. v. Van Cleave, 34 Tex. Civ. App. 312, 78 S. W. 541; Pool v. Unknown Heirs of Foster, 49 S. W. 923; Mann v. Hossack, 96 S. W. 767. In this ruling, however, no prejudicial error is shown, for the reason that it was shown, without dispute, we think; that the claimed deed from the appellee to Jack Love, administrator of the estate of R. B. Love, was never accepted by him, and therefore an outstanding title by reason of that deed was shown or could have been shown if the court had admitted it in evidence.

The tenth assignment is overruled. As hereinabove stated, the facts in evidence showed beyond dispute that it was the intention of the parties—that is, Hansbro and William Hunter—to completely rescind and cancel, and they did rescind and cancel, the original executory contract of sale of the 59 acres of land by Hansbro to Hunter by Hunter agreeing to redeliver and return to

233 S.W.—64

Hansbro the deed he held and Hansbro agreeing to cancel and having canceled the notes he held against Hunter, representing the purchase money for the land. Therefore the court did not err in concluding, as a matter of law, that there was a complete rescission and cancellation of the executory sale of this land from Hansbro to Hunter and in holding that the effect of this transaction was to revest the title in Hansbro.

The eleventh assignment raises practically the same question of law as the tenth, and it is therefore overruled.

The twelfth assignment challenges the fourth conclusion of law made by the trial court. That conclusion was that the conveyance by William Hunter and wife to J. C. Hogue estopped them from asserting title either against R. B. Love or the appellee, Hale, who, the court concluded, were both innocent purchasers from J. C. Hogue of the William Hunter interest in the property in controversy. It was therein further concluded that Hale, the appellee, was an innocent purchaser for value, without notice, etc. As to whether the court's conclusion that William Hunter and wife would be estopped to assert their title against Love or Hale, we do not find it necessary to determine, for the reason that we have concluded that under the findings of fact made by the trial court, in connection with the undisputed evidence on the point, the appellee, Hale, was an innocent purchaser, as we understand the authorities in this state on that point, and therefore it is unnecessary to determine the question of estoppel involved in this assignment; and it is also unnecessary to determine the point raised by the thirteenth assignment, which challenges the fifth conclusion of law made by the trial court to the effect that Ed Hunter was estopped by his deed to R. B. Love reciting the cancellation of the vendor's lien notes from asserting title to the property in controversy against the appellee, Hale. We say it is unnecessary to determine the point for the reason that the court found as a fact that the conveyance by Ed Hunter to Love was, in fact, intended to be just what the deed purported on its face to be, a straight conveyance of the land back to Love, in cancellation of the vendor's lien notes, and the evidence, as we have said, was sufficient to warrant that finding by the trial court. Therefore it was not necessary to invoke the principle of estoppel as against Ed Hunter. It is not claimed that there was any collusion between Ed Hunter and Love to in any manner defraud Ed Hunter and wife, and, in the absence of such a showing, Ed Hunter had a perfect legal right to reconvey the land to Love in discharge of the purchase-money notes owing by him.

The fourteenth assignment raises practi-

cally the same question as is raised by the thirteenth, and is therefore overruled.

[4] At a former day of this term this court announced from the bench its judgment in this case, which was that the judgment of the trial court should be affirmed in part and in part reversed, and the cause remanded, and such order was entered upon the docket, but a written opinion was never prepared and filed so disposing of the case. At the time the judgment was so announced we were of the opinion that the trial court was in error in not rendering judgment in favor of William Hunter and wife as to an undivided interest in the land in controversy, and had concluded that the cause should be remanded to the trial court with certain instructions in that connection. Our reason for so holding at the time was that, in our opinion, William Hunter's actual possession of the property, at the time R. B. Love conveyed the property to the appellee, W. B. Hale, was sufficient of itself to charge Hale with notice of whatever interest or right William Hunter and wife had in the property, and that Hale could not, therefore, be an innocent purchaser, because it was shown beyond dispute, and the court found, that the deed executed by William Hunter and wife to J. C. Hogue was intended merely as a mortgage between them, and, the property being the homestead of Hunter and wife, no lien was thereby created, and the instrument was absolutely null and void. But, upon further consideration of the point, we had doubts about the correctness of this view, and upon thorough and full consideration, we have concluded that we were in error in that view, and that the possession of William Hunter and wife of the property at the time Hale purchased from Love was not, of itself, sufficient to put Hale upon notice of the fact that the deed from Hunter and wife to Hogue was a mortgage only. The undisputed facts show that before Hale purchased he sought legal advice as to the status of the title to the land and was assured that the title to the land was good in the Hunters, and it was further shown by Hale's testimony, which was given credence by the trial judge, that he had no actual knowledge of the nature of the transaction between William Hunter and wife and J. C. Hogue, and did not know that the deed from Hunter and wife to Hogue was only intended to secure the payment of money; and the evidence is further undisputed that at the time Hale bought from Love, to whom Hogue had conveyed, the deed from Hunter and wife to Hogue was duly recorded in the deed records of San Jacinto county, as well as the deed from Hogue to Love. Such be-

ing the facts, and there being no actual knowledge on the part of Hale of the nature of the transaction between William Hunter and wife and Hogue, he was entitled to he protected as an innocent purchaser of the land as was concluded by the trial court, and therefore there was no error in the trial court's judgment in any respect, and we were in error in our first conclusion to the contrary. The point seems to be clearly settled by the Supreme Court of this state in the case of Eylar v. Eylar, 60 Tex. 315. It was there substantially held that a purchaser from a vendee, whose vendor remains in possession, is not bound to inquire further as to the title, when he finds on record in the proper county a deed from such vendor, purporting to convey title, properly proved up and registered. It was said, substantially, that to hold otherwise would be to strike at the very foundation of the policy on which registration laws rest. It was said that when inquiry as to title is prosecuted to the highest source, which affords evidence of the right, there could be no obligation to explore inferior and less reliable channels of information, and it was held that the record was the highest source which affords such evidence of right. The opinion in Eylar v. Eylar was written by one of the ablest jurists who has adorned the supreme bench of this state, Chief Justice Stayton. The rule there announced was expressly followed in Hurt v. Cooper, 63 Tex. 362, and also in Love v. Breedlove, 75 Tex. 652, 13 S. W. 222, and also reaffirmed in Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37.

[5] We are not unmindful that some of the Courts of Civil Appeals of this state seem to have held contrary to these decisions on the point here under consideration, and it may be that expressions found in certain opinions of the Supreme Court in other cases were accepted as overruling the Eylar and other cases above mentioned on the point by implication. However this may be, the point is so clearly decided in the Eylar Case, and so firmly adhered to without modification in the other cases above mentioned, following the Eylar Case, that we do not hesitate to say that the question seems settled by the Supreme Court of this state, and such decisions are binding upon this court.

It follows from the foregoing that this court is of the opinion that its order heretofore entered on the trial docket, affirming in part and reversing and remanding in part this cause should be set aside, and it is here now set aside of the court's own motion, and instead the judgment will be affirmed in its entirety, and it will be so ordered.