## W. C. BELCHER LAND MORTGAGE CO. v. CLARK et al.   (No. 9529.)*

·(Court of Civil Appeals of Texas. Fort Worth.
Jan. 14, 1922. Rehearing Denied
Feb. 18, 1922.)

**1. Appeal and error ☞845(2)—Agreed statement held to support judgment for heirs of married woman if defendant vendee had notice of any interest in them.**

In action by heirs of married woman who owned a separate interest in part of land in controversy and a community interest in the rest, against a subsequent purchaser from the woman's husband, tried on an agreed statement of facts, where the pleadings were not in the record, and the agreed statement provided for judgment for plaintiffs if defendant, under the facts, had knowledge of plaintiffs' interest, investigation on appeal is restricted to determination of question whether appellant had notice, either actual or constructive, of appellees' interest in the property, whatever may be the character of that interest.

**2. Wills ☞673—Devise to husband for life for care of children creates a trust for the children.**

A will by a married woman, authorized by Vernon's Sayles' Ann. Civ. St. 1914, art. 7855, which devised to her husband for his life the use, income, rents, and benefit of her property to be used by him in the rearing and education of her children, with remainder to the children on the death of the husband, creates a life estate in trust for the children, and is not invalid as creating a life estate in personal property without the intervention of a trustee.

**3. Trusts ☞357(2)—Recorded will gives constructive notice of death of vendor and interest of devisee in lien notes.**

Where a husband and wife had conveyed property, part of which was a separate property of the wife and part of which was community property, and reserved title to secure vendor's lien notes, the probate of a will of such wife recorded as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 7873, 7874, gives constructive notice of the death of decedent and of the interest of her devisees in the vendor's lien notes to a subsequent purchaser from the husband to whom the land had been reconveyed in satisfaction of the lien notes.

**4. Names ☞6—Inaccuracies in name and description of notes in inventory held not to defeat effect as notice.**

Where a married woman's name appeared in the record title and in the conveyance by her subject to vendor's lien notes as "F. C. C.," the fact that her will was signed "Courtney C.," and that the due dates of the vendor's lien notes were improperly stated in the inventory, does not defeat the effect of the whole record as notice, where Mrs. F. C. C. was commonly known as "Courtney C." and the inventory otherwise correctly and sufficiently described the notes.

**5. Notice ☞6—Imputed from knowledge of facts putting on inquiry which will repeal proof.**

Knowledge of a fact will be imputed from circumstances known to one concerning a matter in which he is ·interested, and which ·are sufficient· to require him as an honest and prudent person to make an investigation which would lead to a discovery of the right conflicting with his own, even though he had no actual notice.

**6. Deeds ☞183—Reconveyance to vendor who reserved superior title is cancellation of original conveyance.**

Where property which had been conveyed subject to a reserved superior title to secure purchase-money notes was reconveyed to the original vendors for the cancellation of the purchase-money notes subject to a lien to secure a new note, which was evidently for the amount of the original payment with interest, the reconveyance was in legal effect simply a revocation or cancellation of the original conveyance.

**7. Trusts ☞69 — Reconveyance to husband alone held to be in trust for children as to wife's interest.**

Where a purchaser from a husband and wife reconveyed the property to the husband alone in satisfaction of the notes secured by reserved title and repayment of the purchase money paid, after the death of the. wife, the reconveyance vested in the husband the legal title in trust for the interests of his children, derived from his wife.

**8. Trusts ☞357(2)—Grantee in trust deed given as security held to have had notice of beneficial interest of vendor's children.**

Where property was conveyed by a husband and wife, part of which was the wife's separate property and part of which was community property, and thereafter the purchaser reconveyed the property to the husband alone in satisfaction .of the purchase-money notes, secured by a vendor's lien, a third party who advanced money to the husband and took a trust deed to which expressly recognized the reconveyance was charged with constructive ·notice of the interest of the children arising from the reconveyance to their father, which was in effect a cancellation of the original conveyance and vested the legal title to their mother's interest in him in trust for them.

Dunklin, J., dissenting.

Appeal from District Court, Parker County; F. O. McKinsey, Judge.

Action by W. P. Clark and others against the W. C. Belcher Land Mortgage Company. Judgment for the plaintiffs after trial on agreed statement of facts, and defendant appeals. Affirmed.

Thompson, Barwise, Wharton & Hiner, and Wm. J. Berne, all of Fort Worth, for appellant.

Hood & Shadle, of Weatherford, for appellees. .

CONNER, C. J. This case was submitted to the trial court upon an agreed statement of facts under our statutes. We quote such parts of the agreed statement as we think necessary to an understanding of our conclusion. It was agreed that Mrs. F. C. Clark owned "in her own right" two surveys of land situated in Parker county, Tex., aggregating 189 acres, that Mrs. F. C. Clark and her husband, J. M. Clark, owned as community property another survey of 160 acres in Parker county, and that "good title thereto is shown by the records in the parties above named at the time they acquired the same."

On the 1st day of March, 1907, J. M. Clark and wife, F. C. Clark, executed and delivered to H. W. Byers and wife, Lillie F. Byers, a deed to the land above described, for a consideration of $12,000, of which $4,165.05 was paid in cash, with three vendor's lien notes for $2,000 each, of even date with the deed, bearing 10 per cent. interest from their date and made payable on the 1st of March, 1909, 1911 and 1913, respectively. To secure the payment of said notes the vendor's lien was expressly reserved in the deed.

Mrs. F. C. Clark died in Parker county, Tex., July 20, 1907. Her will bore date of May 28, 1906, and was signed "Courtney Clark," the name by which Mrs. F. C. Clark was generally and commonly known. The will was duly probated and "admitted for record on the 4th day of September, 1907," with its attestation recorded in Probate Book 10, page 1, Parker County, Tex. Her husband, J. M. Clark, was appointed independent executor with direction that no other action be taken in the county court in the administration of her estate other than to record the will and return an inventory and appraisement of her estate and list of claims. It contained, among others, the following paragraphs:

"Second. I give and bequeath to my husband, J. M. Clark, the use, income, rents and benefits of all the property, real, personal and mixed, I may die seized and possessed of, to have and to hold the same for and during his natural life, to be used by him as to him may seem best in the rearing and education of our children.

Third. I give and bequeath to my children, William Pierce Clark, Jesse Lee Clark, Robert Roy Clark, Chandler Clark, Bryon Clark and Ollie May Clark, the reversion and remainder of all the property, real, personal and mixed, I may die seized and possessed of; from and after the decease of my husband, J. M. Clark, to have and to hold the same to the said William Pierce Clark, Jesse Lee Clark, Robert Roy Clark, Chandler Clark, Bryon Clark and Ollie May Clark, to their use and behoof forever, to be equally divided between them, share and share alike, and it is hereby specially desired and I hereby give all the property I may die seized of to vest in fee simple to my said children as above set out, share and share alike, at the death of my husband, J. M. Clark."

J. M. Clark, as executor, and others, as appraisers, returned and filed in the probate court of Parker county, on September 13, 1907, an inventory and list of claims. The inventory specified the three vendor's lien notes executed by Byers and wife; it being declared in connection therewith that an interest therein of $1,200 was the separate property of the deceased. The inventory and list of claims was recorded in the probate minutes of Parker county on September 16, 1907, and was in all things properly approved by the probate court of Parker county.

It further appears that on the 1st day of January, 1908, H. W. Byers and wife, Lillie Byers, reconveyed to J. M. Clark the lands conveyed to them by J. M. Clark and his wife, Mrs. F. C. Clark, on the 1st day of March, 1907, for a recited consideration of $12,334.95—

"paid and secured to be paid by J. M. Clark as follows: The surrender and cancellation of three vendor's lien notes for $2,000 each signed by H. W. Byers and payable to said J. M. Clark and described in a deed from J. M. Clark and wife to H. W. Byers, dated March 1, 1907, and recorded in Volume 68, on page 368, of the Deed Records of Parker County, Tex. * * * And for the further consideration of two certain notes, or bonds, executed by said J. M. Clark for the sum of $2,500 and $2,000, respectively, in favor of the W. C. Belcher Land Mortgage Company, * * * which are fully described in a deed of trust of even date herewith made by said Clark in favor of said mortgage company."

The deed was in the form of a general warranty deed, but the vendor's lien was retained against the property conveyed "until the above-described notes and all interest thereon are fully paid according to their face and tenor, effect and reading, when this deed shall become absolute."

On the same day, to wit, January 1, 1908, J. M. Clark executed and delivered to the W. C. Belcher Land Mortgage Company his obligation for the sum of $2,500 and $2,000, respectively, and secured the same by a trust deed in a familiar form. The trust deed, among other things, recited that it was—

"executed, delivered, and accepted in aid of a just and subsisting vendor's lien upon the hereinbefore conveyed real estate and premises, which said vendor's lien is retained in a certain deed of conveyance of date the 1st day of January, 1908, executed by H. W. Byers and wife, conveying said described real estate and premises to J. M. Clark. * * * And said bonds and notes (executed by J. M. Clark to the mortgage company) hereby further secured are executed, delivered, and accepted in renewal and extension of the original debt for the unpaid portion of the purchase money of the said real estate and premises and for interest accrued and to accrue thereon, and the holder or holders of said bonds and notes, or of either or any of them, secures, retains, and is subrogated

to all the rights, remedies, and liens of the vendor of the said real estate and premises, his heirs and assigns, expressed or implied in the said deed, and the said vendor's lien upon the said real estate and premises and every part thereof is hereby expressly retained and perpetuated to secure the full payment of said bonds and notes, with interest and attorney's fees as therein expressed."

The deed of trust authorized a sale of the premises in case of default on the part of Clark on the payment of his notes.

Thereafter, on November 3, 1908, J. M. Clark, by warranty deed, conveyed the lands in controversy to J. W. Clark "in consideration of $2,000 paid by J. M. Clark as follows: $2,000 cash in hand to me paid, the receipt of which is hereby acknowledged; also the assumption by grantee of two notes for the sum of $2,500 and $2,000, respectively, executed by J. M. Clark on January 1, 1908, and payable to the W. C. Belcher Land Mortgage Company at Fort Worth, Tex., five and eight years after date, and also all interest accruing or to accrue on said notes, all fully described in a deed of trust executed by J. M. Clark" to secure the mortgage company. While the deed is in the form of a warranty deed, the grant is only to "all of the grantee's interest in and to" the lands in question. Later, to wit, on the 30th day of March, 1920, J. M. Clark died intestate in Parker county.

At the maturity of the obligations described in the deed of trust executed by J. M. Clark to the mortgage company, and which were assumed by J. W. Clark in the deed last above mentioned, the same were renewed, and a new obligation was executed by said J. W. Clark in favor of the W. C. Belcher Land Mortgage Company in the sum of $6,000, dated December 28, 1912, due five years after date, to secure payment of which J. W. Clark executed a deed of trust in form substantially similar to that executed by J. M. Clark, reference therein being expressly made to the deed and lien mentioned in the deed from Byers and wife to J. M. Clark, and reference also being made to "the original debt for the unpaid portion of the purchase money of said real estate and premises."

It further appears that J. W. Clark failed to pay the obligation in the deed of trust executed by him, and by virtue of its terms the mortgage company sold the lands in question, at which sale the W. C. Belcher Land Mortgage Company became the purchaser and thereafter sold to one W. M. Brown.

We deem it material only to further quote the following paragraphs of the agreed statement on which the case was submitted:

"It is further agreed that, if the facts herein stated show notice to the W. C. Belcher Land Mortgage Company of the claim, right, or interest of the plaintiffs herein to any part or portion of the subject-matter of this controversy, then in such event it is agreed that judgment may be entered in their favor against the W. C. Belcher Land Mortgage Company and the other defendants in this suit for the sum of $1,100, with 6 per cent. interest thereon from the date of the death of J. M. Clark, which was on March 30, 1920, which judgment shall also fix and establish a lien, with proper decree of foreclosure upon all of the lands described in the deed from J. M. Clark and wife to H. W. Byers, with the exception of that portion that is shown to be owned by Jeff Scoville, and subsequently purchased by the W. C. Belcher Land Mortgage Company.

"It is further agreed that, if notice is shown to the defendants by the facts herein stated, then judgment may be entered for the plaintiffs for $1,100, with 6 per cent. interest thereon from the date of the death of J. M. Clark, which occurred on March 30, 1920, but, if legal notice of plaintiffs' claim is not shown, then judgment shall be entered in favor of the defendants."

The case is presented to us in appellant's brief under two assignments. Under the first assignment it is insisted that—

"A life estate in personal property cannot be created by will without the intervention of a trustee, and the devisee of such an estate takes the same in fee, freed of the claim or claims of the remainderman."

Under the second assignment it is insisted that—

"The probate record in question was not constructive notice to us of plaintiffs' interest in said notes, because probate records are not constructive notice of their contents."

[1] It is evident from this presentation that appellant has assumed that the only interest of the appellees, the children of J. M. Clark and F. C. Clark, was and is in the vendor's lien notes executed and delivered by H. W. Byers to J. M. Clark, and which were subsisting obligations at the time of the death of Mrs. F. C. Clark and at the time of the probate of her will. But we are of the opinion that the interest of appellees is not to be so limited. Under the terms of the agreement our investigation is restricted to a determination of the question of whether appellant had notice, either actual or constructive, of appellees' interest in the property in question, whatever may be the character of that interest. In this connection it should be observed that the transcript does not present a copy of the pleadings. We cannot know therefrom whether the action as instituted by appellees was to recover the lands that were originally owned by their mother in her separate right, and their mother's interest in the community property, or whether they sought to recover only a proportionate interest in the vendor's lien notes. But, whether one or the other, appellees are entitled to the judgment rendered in their favor if the facts stated sufficiently support the trial court's conclusion that appellant had notice of that interest. It therefore seems unnecessary for us to discuss the question of whether a life estate may, under our

laws, be created in personal property without the intervention of a trustee.

[2] However, in deference to appellant's presentation of the case, we will briefly notice its propositions. By the terms of Mrs. F. C. Clark's will, there was devised to her husband, J. M. Clark, "during his natural life," not the title in fee, but merely "the use, income, rents and benefits" of all the property which Mrs. F. C. Clark was entitled to at the time of her death, such use being limited to the rearing and education of their children, with the remainder over to them upon the death of J. M. Clark. That such a will is valid and creates a life estate and imposes upon the taker of the life estate a trust for the benefit of the beneficiaries named seems to be well supported by our decisions, whatever may be the rule in other states. Article 7855, V. S. Tex. Civ. Statutes; McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412; Sprinkle v. Leslie, 36 Tex. Civ. App. 356, 81 S. W. 1018; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824; Wiess v. Goodhue, 98 Tex. 274, 83 S. W. 178; Dulin v. Moore, 96 Tex. 135, 70 S. W. 742; 40 Cyc. p. 1614, and authorities cited in note 29.

[3] We further conclude, if necessary to sustain the judgment, that the agreed statement is sufficient to support the court's finding to the effect that the appellant company had notice of Mrs. F. C. Clark's death and consequent interest of her children in the vendor's lien notes mentioned. A decree probating a will and the proceedings thereunder is at least in the nature of a decree in rem, which concludes the whole world. See Freeman on Judgments (4th Ed.) § 648; 15 R. C. L. p. 637, § 80.

Article 7873, V. S. Tex. Civ. Statutes, provides that:

"All original wills, together with the probate thereof, shall be deposited in the office of the clerk of the county court * * * wherein the same shall have been probated, and shall there remain, except during such time as they may be removed to some other court, by proper process, for inspection."

Article 7874 declares:

"Every such will, together with the probate thereof, shall be recorded by the clerk of the county court in a book to be kept for that purpose; and certified copies of such will and the probate of the same, or of the record thereof, may be recorded in other counties, and may be used in evidence as the original might be."

It may thus be seen that the law provides for the record of a will, together with its probate, and the agreed statement of facts shows that the will in question was "recorded in Probate Book 10, page 1, Parker county, Tex.," and that it was "duly probated and admitted for record" on the 4th day of September, 1907. No authoritative Texas case has been cited holding that the probating decree and record of a will record-ed, as provided in article 7874, above quoted, is without effect as affecting all the world with constructive notice of its legal operation. Nor do we find in our statutes of registration where it is specifically required that the probate of a domestic will shall be recorded otherwise than is pointed out in that article. The requirement that it be recorded can well be said to have been intended to give notice of its contents and effect. And the case of Hymer v. Hollyfield, (Tex Civ. App.) 87 S. W. 722, writ refused, at least tends to the conclusion that a probated will, recorded as directed in the article referred to, gives constructive notice of the death of the testator and of the interest devised.

[4] It is insisted that the fact that the will was signed by "Courtney Clark" instead of F. C. Clark, and that the due dates of the notes were improperly stated in the inventory renders the record ineffectual as notice. But the will recites that the testator is the wife of J. M. Clark, and it is agreed that Mrs. F. C. Clark was "commonly known" as "Courtney Clark," and the inventory, among other things describes "three vendor's lien notes for the sum of $2,000 each," signed by H. W. Byers, and declares that the deceased was entitled to an interest of $1,200 in those notes as her separate property. So that, if the probate proceedings were sufficient to put the appellant company upon inquiry, as it seems to us they are, the inaccuracies noted could not mislead any one who should examine the record; for, taken as a whole, an inquirer, by the exercise of diligence, could certainly learn that the will in question was that of Mrs. F. C. Clark, and that certain of the lands conveyed to Byers, and in consideration of which the three vendor's lien notes were given was owned in her own separate right.

[5] But, if mistaken in the foregoing conclusions, we think for yet another and perhaps a better reason appellant must be held to have had notice of the interest of appellees in the subject-matter of this suit. It is agreed that appellant had no actual "knowledge." But knowledge will be imputed and may be implied from circumstances where the circumstances known to one concerning a matter in which he is interested are sufficient to require him as an honest and prudent person to investigate concerning the rights of others in the same matter, and diligent investigation will lead to a discovery of the right conflicting with his own. In such a case he is charged with knowledge of all that might have been discovered by such investigation. In others words, whatever is notice enough to excite attention and put the party on his guard and call for inquiry is also notice of everything to which

it is afterwards found that such inquiry might have led, although all was unknown for want of investigation.   See Lumber Co. v. Broocks (Tex. Civ. App.) 165 S. W. 507, writ of error denied; Skov v. Coffin (Tex. Civ. App.) 137 S. W. 450, writ of error denied; Hawley v. Bullock, 29 Tex. 217; Humphries v. Freeman, 22 Tex. 45; Harrison v. Boring & Kennard, 44 Tex. 255.

[6] By again referring to the agreed statement of facts, it will be seen that on January 1, 1908, H. W. Byers and wife reconveyed all of the lands theretofore conveyed to him by J. M. Clark and wife. This deed recites that the consideration for this reconveyance was made in consideration, among other things, of "the surrender and cancellation of three vendor's lien notes for $2,000 each, signed by H. W. Byers and payable to J. M. Clark, and described in a deed from J. M. Clark and wife to H. W. Byers, dated March 1, 1907," and the further consideration of "two certain notes or bonds executed by J. M. Clark for the sum of $2,500 and $2,000, respectively, in favor of W. C. Belcher Land Mortgage Company." It is evident from an examination of this deed that the $4,500 evidenced by the notes to the mortgage company was borrowed by J. M. Clark for the purpose of restoring to H. W. Byers the amount of cash, plus interest, etc., that Byers had paid to J. M. Clark at the time of his original purchase. So that, in legal effect, this transaction amounted to a revocation or cancellation of the original conveyance by J. M. Clark and wife to H. W. Byers.

[7] In the recent case of Hunter v. Hale (Tex. Civ. App.) 233 S. W. 1005, it was distinctly held, as has often been held, that a deed to a vendee, reserving the vendor's lien, is an executory contract and leaves the superior legal title in the vendor, and that as an executory contract it may, by agreement between the vendor and the vendee, be rescinded by a return of the deed by the vendee, and the vendor's cancellation of the notes given for the purchase price. It was held that such transaction had the effect in equity to reconvey all the right, title, and interest that the deed had vested in the purchaser. In that case the deed had not been recorded. In the case before us it was. Hence a formal transfer by the vendee, Byers, back to J. M. Clark would serve to remove a cloud upon the title, but no other right having intervened the distinction is not otherwise material. The fact is that J. M. Clark canceled the three vendor's lien notes, and it is difficult to see, the notes having been made payable to him, how they could thereafter be enforced by either J. M. Clark or any one of the beneficiaries under Mrs. Clark's will. And therefore, as stated, we think that the transaction as a whole amounted in equity to a revocation or re-

scission of the original executory contract, by virtue of which the three vendor's lien notes had been executed, and that the execution of the deed in return to J. M. Clark, thereby vesting him with the apparent legal title, will in no wise injuriously affect the interest of Mrs. F. C. Clark's children. In its essence and in equity such reconveyance vested in J. M. Clark the legal title in trust for the interest of his children as fully as such interest would have vested had the original conveyance by Clark and wife to Byers never been made. And the transaction, as we conclude, is to be so construed and given effect as against all parties having notice thereof. See Stone v. Kahle, 22 Tex. Civ. App. 185, 54 S. W. 375; Hand v. Errington (Tex. Civ. App.) 233 S. W. 567, and cases therein cited; Simonton v. White, 93 Tex. 50, 53 S. W. 339, 77 Am. St. Rep. 824; Monday v. Vance, 92 Tex. 428, 49 S. W. 516.

[8] That appellant had notice of this reconveyance and such cancellation of the notes and such equitable reinvestment of right in Mrs. Clark's devisees, we think, cannot be doubted. It in truth made itself a party to the transaction. It loaned J. M. Clark the money necessary to restore Byers to his original position. It required a trust deed expressly referring to the transaction. It also knew, or must be held to know, that before the original conveyance Mrs. F. C. Clark owned in her own separate right one of the tracts of land and the community interest in the rest. We say that appellant company knew this for the reason that it was all exhibited by the recorded chain of title through and under which it asserts its right.

We accordingly conclude that, for the reason stated, the judgment below must be affirmed.

DUNKLIN, J. (dissenting). By the deed from H. W. Byers and wife to J. M. Clark, the legal title to the land was vested in J. M. Clark, which afterwards passed to the W. C. Belcher Land Mortgage Company and from that Company to W. M. Brown, its assignee. The burden was upon the plaintiffs, the devisees of Mrs. F. C. Clark, deceased, to show notice of their equitable title to the mortgage company at the time of the execution to it of the deed of trust by J. M. Clark, since their title was an equitable title only. Hill v. Moore, 62 Tex. 610; Johnson v. Newman, 43 Tex. 628; Biggerstaff v. Murphy, 3 Tex. Civ. App. 363, 22 S. W. 768; Hicks v. Hicks (Tex. Civ. App.) 26 S. W. 227; Barnes v. Jamison, 24 Tex. 362; Saunders v. Isbell, 5 Tex. Civ. App. 513, 24 S. W. 307; Wallis v. DeHart (Tex. Civ. App.) 108 S. W. 180; Dewees v. Nicholson (Tex. Civ. App.) 182 S. W. 396; Halbert v. De Bode, 15 Tex. Civ. App. 615, 40 S. W. 1011; Peterson v. McCauley (Tex. Civ. App.) 25 S. W. 826.

In the opinion of the writer, the probate

proceedings in the county court, including the probating and recording of Mrs. F. C. Clark's will, was not constructive notice to the mortgage company. The will was a domestic, and not a foreign, will, and the statute requiring it to be recorded in the records of the probate court does not provide that such record shall be constructive notice of the contents of the will; nor does any other registration statute so provide. Such was the effect of the ruling in the following cases and no decisions contrary thereto have been pointed out by counsel for the appellees, nor otherwise discovered by this court. Allen v. Atchison, 26 Tex. 616; Davis v. Harmon, 9 Tex. Civ. App. 356, 29 S. W. 492.

In Davis v. Harmon, supra, this court, speaking through Associate Justice Head, said:

"It has been repeatedly decided that constructive notice by registration is a creature of the statute, and must be given according to its terms. Burnham v. Chandler, 15 Tex. 441; Webb on Record Title, § 135."

The agreed facts show that the mortgage company had no actual knowledge of the probate proceedings, and the only question is: Did it have constructive notice of the same?

But, even though the recording of Mrs. F. C. Clark's will in the probate records, and the showing in the inventory of her estate that the vendor's lien notes, executed by Byers and wife and made payable to J. M. Clark, were in part the separate property of Mrs. Clark and were devised to her children, all had the same effect to operate as constructive notice to subsequent purchasers as if the will had been a foreign will and duly recorded in the deed records, or as if Mrs. Clark had executed a deed of conveyance to her children instead of devising it to them, and such deed had been duly recorded, yet neither such probate records nor the registration of the deed would have been constructive notice to the mortgage company because that company did not claim title through the devisees of Mrs. Clark, but claimed through a prior conveyance executed by her. This conclusion seems to be well settled by many decisions of this state. White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875, was a controversy between Mrs. White and Mrs. McGregor, as assignee of one Evans, over title to land. Both parties claimed title through John Crum as the common source. The first link in Mrs. White's chain of title was a deed from John Crum to Jane Dickerson, his mother, dated April 23, 1884, and by consecutive deeds from different subsequent purchasers that title passed to Mrs. White. Mrs. McGregor was the devisee of the land under the will of Evans, who purchased the land at execution sale, under a judgment against John Crum, the sheriff's deed being dated August 4, 1884, more than a year later than the deed from Crum to Jane Dickerson. Each of those two deeds was recorded immediately after its execution. The deed to Mrs. White, which evidenced the title which she claimed, was executed December 22, 1892, more than seven years after the recording of the deed to Evans. The following excerpt from the opinion in that case presents the issues determined:

"According to the findings of the Court of Civil Appeals, the conveyance by John Crum to Mrs. Dickerson, his mother, was made with the intent to defraud his creditors. On the other hand, they found that when Mrs. White purchased she paid value for the land without actual notice of any adverse claim. The deed to Mrs. Dickerson recited a consideration of $200 and that it was paid.

"In determining the superiority of the respective titles, two questions present themselves: (1) Was the registration of the deed of the sheriff to Evans notice to Mrs. White, the plaintiff, of the existence of such deed? (2) and if so, should such constructive notice be deemed to give her notice also that the plaintiff in execution claimed that the deed from John Crum to his mother was fraudulent as to his creditors and therefore void?"

Both the questions so stated were answered in the negative, and therefore in favor of Mrs. White's title. And in discussing the first question the court, through Chief Justice Gaines, after citing many prior decisions sustaining the holding, said:

"The decisions of our court above cited establish a rule of property and we need not stop to inquire whether they are correct or not. The effect of the rule is to hold that practically article 4652 adds nothing to the law as it previously existed; and in determining the questions before us, we are brought back to the construction of article 4640. As to the matter in hand, the substance of that article is to declare a deed not duly recorded void as against subsequent purchasers for value without notice; and the question arises, what is meant by subsequent purchasers? Do the words mean all persons who purchase the land after the deed is recorded, or only those who are subsequent in the chain of title? If a grantor conveys the same property twice and the second grantee puts his deed upon record, is it notice to one who subsequently purchases from the first grantee? We think not. The record is not notice to the first grantee, for he is a prior purchaser. Nor do we think it was intended to be notice to any one who should purchase from him." (Articles 4652 and 4640 are now 6842 and 6824, respectively.)

See, also, Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Holmes v. Buckner, 67 Tex. 107, 2 S. W. 452; Thompson v. Rust, 32 Tex. Civ. App. 443, 74 S. W. 924 (writ of error denied); 23 R. C. L. p. 207, § 64.

The deed from J. M. Clark and wife to H. W. Byers and wife, subject to the vendor's lien notes therein noted, conveyed both the legal and equitable title to the land which had theretofore been the separate property of Mrs. Clark, which conveyance

unquestionably was not affected by Mrs. Clark's will in favor of her children. And the same would have been true of the title of any assignee of Byers assuming payment of the vendor's lien notes to J. M. Clark. The legal title to that property was reconveyed to J. M. Clark, and the claim of the children to an equitable interest in it is based solely upon the fact that their mother owned a pro rata interest in the vendor's lien notes which Byers had executed to J. M. Clark in part consideration for the conveyance to Byers, and which were paid by Byers by his conveyance to J. M. Clark. That equity did not appear in the chain of title through which the mortgage company and its assignees and subsequent assignees claimed; and hence for that reason the company and its assignees were not chargeable with constructive notice of it.

The further contention that, independently of the question of constructive notice of the probate proceedings when the mortgage company took the deed of trust from J. M. Clark to secure the purchase money advanced with which to pay Byers, it had notice sufficient to put a reasonably prudent person on inquiry, which, if pursued, would have led to a discovery of the fact that Mrs. Clark's children owned an equitable interest in the land, is based solely upon notice of the following facts, appearing in the chain of J. M. Clark's title at the time: First, that a portion of the land conveyed to H. W. Byers and wife by J. M. Clark and wife was at the time of the conveyance the separate property of the wife; and, second, that the cancellation of the vendor's lien notes for $6,000 theretofore executed by Byers and wife to J. M. Clark was recited as part of the consideration of the conveyance from Byers and wife to J. M. Clark. As before noted, the burden was upon the claimants of that equitable interest in the land to show notice to the mortgage company of that equity; and the writer is of the opinion that the facts recited were not sufficient to discharge that burden.

In Eylar v. Eylar, 60 Tex. 315, a fictitious sale was made of the business homestead of J. F. Eylar to O. A. Eylar, the deed being duly executed and acknowledged by J. F. Eylar and wife and immediately placed of record. The deed recited a cash consideration of $500 paid, but, in fact, it was intended and understood between the parties thereto to be merely a mortgage to secure the payment of a debt which J. F. Eylar owed to O. A. Eylar. J. F. Eylar continued to occupy the property as his business homestead. Approximately six months after the deed was executed O. A. Eylar conveyed the property to Ann E. Eylar, who paid a valuable consideration and without actual knowledge of the fictitious character of the conveyance first mentioned.

It was held that the continued possession of the property by J. F. Eylar as his place of business was not sufficient to put Mrs. Ann E. Eylar upon inquiry as to whether J. F. Eylar claimed title to the property, although, in discussing the case, the court referred to the general rule that possession is strong presumptive evidence of a claim of title.

The cases of Hurt v. Cooper, 63 Tex. 362, and Love v. Breedlove, 75 Tex. 649, 13 S. W. 222, were also controversies between claimants of title to homestead property through fictitious conveyances of the same by husband and wife, made to borrow money thereon, such fictitious conveyances being duly acknowledged and recorded, and the husband and wife remaining in possession thereof. And in both of those cases, which followed the Eylar Case, it was held that such continuation of possession of the property for homestead purposes by the husband and wife was not notice of the fictitious character of the simulated sale, if the purchaser had no actual knowledge otherwise of such fact. In the case of Sanger Bros. v. Brooks, 101 Tex. 115, 105 S. W. 37, a husband and wife made a pretended sale of their homestead to a creditor, who at the same time reconveyed the property to the grantors, reserving a vendor's lien on the property to secure a note purporting to have been given as part of the consideration for the last conveyance. It was held that a purchaser of that note was chargeable with notice of the fictitious character of the conveyance executed by the husband and wife, by reason of the fact that that deed and the reconveyance to them by the grantee were executed contemporaneously. In the opinion written by Chief Justice Gaines, the cases of Eylar v. Eylar, Hurt v. Cooper, and Love v. Breedlove, supra, were all cited with implied approval, but they were distinguished from Sanger Bros. v. Brooks by reason of the fact that in that case the reconveyance was contemporaneous with the fictitious conveyance of the homestead, while in the other cases the reconveyances were executed several months subsequently. See, also, Stiles v. Japhet, 84 Tex. 91, 19 S. W. 450; Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121; Saunders v. Isbell, 5 Tex. Civ. App. 513, 24 S. W. 307; Smith v. Olsen, 23 Tex. Civ. App. 458, 56 S. W. 568; Peterson v. McCauley (Tex. Civ. App.) 25 S. W. 826; Wallis v. Dehart (Tex. Civ. App.) 108 S. W. 180; Armstrong v. Hix, 107 Tex. 194, 175 S. W. 430; Griggs v. Houston Oil Co. (Tex. Civ. App.) 213 S. W. 216.

For the reasons stated, the writer is of the opinion that the judgment of the trial court should be reversed, and judgment should be here rendered in favor of the appellants.